08-5589-cr
United States v. Madarikan

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)." A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED ON ANY PARTY NOT REPRESENTED BY COUNSEL UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/). IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of December, two thousand nine.

PRESENT: RALPH K. WINTER,
REENA RAGGI,
DEBRA ANN LIVINGSTON,
*Circuit Judges.*

------------------------------------------------------------------
UNITED STATES OF AMERICA,

*Appellee,*

v.                                                    No. 08-5589-cr

MERCY MADARIKAN, also known as Mercy Gage,

*Defendant-Appellant.*

------------------------------------------------------------------

APPEARING FOR APPELLANT:      LEN H. KAMDANG, Federal Defenders of New York, Inc., New York, New York.

APPEARING FOR APPELLEE:       WILLIAM E. SCHAEFFER, Assistant United States Attorney (Jo Ann M. Navickas, Assistant United States Attorney, *on the brief*), *for* Benton

J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from the United States District Court for the Eastern District of New York (John Gleeson, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the district court's judgment of conviction, entered on November 12, 2008, is AFFIRMED.

Defendant Mercy Madarikan, a citizen of the United Kingdom, appeals from a judgment of conviction, entered after a jury trial, for attempted illegal reentry in violation of 8 U.S.C. § 1326(a). Sentenced principally to 8 months' imprisonment, Madarikan here argues that the district court erred in (1) precluding evidence that she was previously allowed to enter the United States in July 2005; and (2) admitting a Certificate of Nonexistence of Record ("CNR") in violation of her Sixth Amendment right of confrontation.[1] We review a district court's evidentiary rulings for abuse of discretion, see Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 148 (2d Cir. 2001), and "[a]lleged violations of the Confrontation Clause . . . de novo, subject to harmless error analysis," United States v. Vitale, 459 F.3d 190, 195 (2d Cir. 2006). In doing so, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

---

[1] A CNR is a document created for purposes of litigation in which a government employee certifies that no record exists of a defendant alien having applied for, or having been granted, permission to reenter the United States.

2

1.    Madarikan's July 2005 Entry

Madarikan submits that the district court abused its discretion when it precluded her from introducing evidence that, in July 2005, eleven years after her conviction for importing heroin into the United States in violation of 21 U.S.C. § 952(a) and eight years after her exclusion and deportation, federal officials at the Dallas Fort Worth International Airport effectively granted her permission to reenter the United States when they stamped her passport and allowed her to proceed through customs. She asserts that evidence of this entry was admissible to impeach the CNR's representation that after a diligent search no record was found indicating that Madarikan had obtained consent from the Attorney General or the Secretary of the Department of Homeland Security for re-admission into the United States. We are not persuaded.

Title 8 U.S.C. § 1326 requires an alien who has been excluded or deported from the United States to obtain the "express[] consent[]" of the Attorney General or the Secretary of DHS "prior to his reembarkation at a place outside the United States," unless he demonstrates his exemption from such requirement.[2] 8 U.S.C. § 1326(a) (emphases added). In construing this provision, we have observed that "[t]here is no statute or regulation that expressly authorizes a border guard to grant the required express consent of the Attorney General, and even if there was an implicit or constructive delegation of such authority, no express consent

_____

[2] Although § 1326 specifically states that an alien must obtain the consent of the Attorney General, as of 2003, the Homeland Security Act of 2002 requires that consent be obtained from the Secretary of DHS. See Pub. L. No. 107-296, 116 Stat. 2135 (2002) (codified at 6 U.S.C. § 202(4)).

3

to reapplication for admission could be found where a deported alien reenters without informing [government] officials of his prior deportations." United States v. Martus, 138 F.3d 95, 97 (2d Cir. 1998) (citation omitted). Madarikan cites no authority undermining the continued viability of Martus, nor does she contend that she informed DHS officials in Dallas that she was previously deported. The district court's exclusion of evidence of her July 2005 entry into the United States was therefore not an abuse of discretion.

## 2. Confrontation Clause

Madarikan argues that, because she had no opportunity to cross-examine the government employee who generated the CNR, admission of that document into evidence was a violation of the Confrontation Clause under Crawford v. Washington, 541 U.S. 36 (2004). In light of the Supreme Court's recent holding in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009),[3] the government concedes the existence of a Confrontation Clause violation but maintains that the error was harmless. We agree.

Where evidence has been admitted in violation of the Confrontation Clause, we will affirm a conviction only if we are persuaded beyond a reasonable doubt that the challenged evidence "did not contribute to the verdict obtained." United States v. McClain, 377 F.3d

---

[3] In Melendez-Diaz, the Court concluded that, in the absence of live testimony, the admission of "certificates of analysis" from state forensic analysts ran afoul of the Confrontation Clause. 129 S. Ct. at 2531, 2540, 2542. In reaching this conclusion, it likened the certificates – which were prepared specifically for purposes of litigation – to "certificate[s] attesting to the fact that [a] clerk had searched for a particular relevant record and failed to find it." Id. at 2539.

4

219, 222 (2d Cir. 2004) (internal quotation marks omitted). In making this determination, we take into account: (1) "the strength of the government's case"; (2) "the degree to which the statement was material to a critical issue"; (3) "the extent to which the statement was cumulative"; and (4) "the degree to which the government emphasized the erroneously admitted evidence in its presentation of the case." United States v. Reifler, 446 F.3d 65, 87 (2d Cir. 2006); see also Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). Although no factor is dispositive, "[t]he strength of the prosecution's case is probably the single most critical factor." United States v. Reifler, 446 F.3d at 87 (alteration in original) (internal quotation marks omitted).

To sustain a conviction for attempted illegal reentry, the government was required to prove that Madarikan (1) is an alien (2) who was deported (3) and thereafter attempted to reenter the United States (4) without the requisite permission to do so. See 8 U.S.C. § 1326. Madarikan does not dispute that the evidence presented by the government at trial was sufficient to satisfy the first three elements. The only disputed issue is thus whether there was any evidence other than the CNR sufficient to establish lack of permission.

On cross-examination, Madarikan conceded that at no time after her deportation did she write any immigration official to request permission to reenter the United States. See Trial. Tr. at 122. In its summation, the government therefore sought to establish lack of permission not only by reference to the CNR, but also by reference to Madarikan's own testimony. While the defense summation attempted to cast doubt on the reliability of the

5

CNR, it offered no response to Madarikan's acknowledgment that she never requested – much less obtained – the express approval under § 1326 required prior to commencing travel to the United States. Even assuming the CNR had not been admitted into evidence, then, Madarikan's concession provided an ample basis for conviction. See generally United States v. Martus, 138 F.3d at 97 (noting that "a good faith or mistake defense does not exist under Section 1326" (internal quotation marks omitted)). Accordingly, although Madarikan's rights under the Sixth Amendment's Confrontation Clause were violated by the admission of the CNR, the error was harmless beyond a reasonable doubt.

3.      Conclusion

For the foregoing reasons, the judgment of conviction is AFFIRMED.

                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, Clerk of Court


                              By:_____