[Nos. 85227-8; 85557-9; En Banc.]
85558-7.
Argued November 8, 2011. Decided March 15, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS SCOTT JASPER, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. LAKI MOIMOI, *Petitioner*.

THE STATE OF WASHINGTON, *Petitioner*, v. CESAR VALADEZ CIENFUEGOS, *Respondent*.

98

*Nancy P. Collins* (of *Washington Appellate Project*), for petitioner Jasper.

*Christine A. Jackson* and *Kristen V. Murray* (of *The Defender Association*), for petitioner Moimoi.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Jerry L. Taylor Jr.* and *James M. Whisman, Deputies*, for petitioner State.

*Eric Broman* (of *Nielsen, Broman & Koch PLLC*), for respondent Cienfuegos.

*Daniel T. Satterberg, Prosecuting Attorney*, and *James M. Whisman, Jerry L. Taylor Jr., Jennifer H.S. Atchison*, and *Peter D. Lewicki, Deputies*, for respondent State.

*Travis Stearns* on behalf of Washington Defender Association, amicus curiae.

*Suzanne Lee Elliott* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 STEPHENS, J. — The principal issue in these consolidated cases is whether certifications attesting to the existence or nonexistence of public records are testimonial statements subject to the demands of the confrontation clause of the Sixth Amendment to the United States Constitution. Prior to the United States Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), we held the confrontation clause does not forbid the admission of such evidence. *State v. Kirkpatrick*, 160 Wn.2d 873, 161 P.3d 990 (2007); *State v. Kronich*, 160 Wn.2d 893, 161 P.3d 982 (2007). The teaching of *Melendez-Diaz*, however, is that certifications declaring the existence or nonexistence of public records are in fact testimonial statements, which may not be introduced into evidence absent confrontation. Accordingly, we now overrule our prior decisions to the extent they are contrary to United States Supreme Court precedent.

¶2 In each case before us, the defendants' confrontation rights were violated by admission of testimonial certifica-

tions. Excepting the hit-and-run conviction at issue in *State v. Jasper*, admission of the certifications was not harmless. We affirm the Court of Appeals in *State v. Jasper*, affirm the superior court in *State v. Cienfuegos*, and reverse the superior court in *State v. Moimoi*. The appropriate remedy is reversal of the affected convictions and remand for new trials.

## FACTS AND PROCEDURAL HISTORY

### State v. Jasper

¶3 On February 14, 2008, Douglas Jasper's vehicle crossed the center line of a roadway and crashed into a car traveling in the opposite direction. Jasper left the scene of the accident and was arrested a short time later. The State charged Jasper with felony hit-and-run and driving while license suspended or revoked (DWLS) in the third degree.

¶4 The arresting officer testified at trial that Jasper admitted his license was suspended. Over Jasper's objection, the State introduced into evidence an affidavit from a legal custodian of driving records. The affidavit states, "After a diligent search, our official record indicates that the status on February 14, 2005, was: . . . Suspended in the third degree." Ex. 16 (Jasper). Attached to the affidavit were two records from the Department of Licensing (DOL). The records are copies of letters mailed to Jasper, dated May 14, 2007. The letters state that Jasper's driving privilege would be suspended on June 28, 2007 if Jasper did not provide proof he had satisfied court requirements regarding citations he had received for driving without liability insurance and failing to comply with vehicle registration laws.

¶5 Jasper testified he had hit his head in the crash and was "really dazed" and "confused" as a result. Verbatim Report of Proceedings (VRP) (Jasper—Mar. 11, 2009) at 28. He explained he was not trying to leave the scene of the crash but was just "walking around." *Id.* at 28-33. On

cross-examination, Jasper admitted he knew his license was suspended at the time of the crash.

¶6 During its deliberations, the jury submitted two questions to the court. The first asked whether a person's obligation to fulfill certain duties after being involved in a motor vehicle collision was "dependent on their mental, emotional, or physical condition." Clerk's Papers (CP) (Jasper) at 49. The second question asked for a definition of "the spirit of the law," a phrase repeatedly used by defense counsel in closing argument. CP (Jasper) at 51; VRP (Jasper —Mar. 12, 2009) at 13, 18. The trial court provided the same written response to each inquiry: "Please re-read your instructions and continue deliberating. No further instructions will be given to this question." CP (Jasper) at 50, 52. The court's response was written on a form that stated it was given "AFTER AFFORDING ALL COUNSEL/PARTIES OPPORTUNITY TO BE HEARD." *Id.* Jasper did not object to the trial court's response.

¶7 The jury convicted Jasper on both counts. On appeal, he argued the admission of the affidavit authored by the DOL records custodian violated his Sixth Amendment right to confrontation. Jasper also claimed that because the trial court responded to the jury's questions in his absence, his rights under the Sixth Amendment, the Fourteenth Amendment, and article I, section 22 of the Washington State Constitution were abridged.

¶8 The Court of Appeals, Division One, held the affidavit constituted testimonial hearsay and its introduction into evidence violated Jasper's right to confront witnesses against him. *State v. Jasper*, 158 Wn. App. 518, 523, 245 P.3d 228 (2010). In so ruling, the court concluded the United States Supreme Court's opinion in *Melendez-Diaz* effectively overruled our earlier decisions in *Kirkpatrick* and *Kronich*. *Id.* at 530. Because the error was not harmless beyond a reasonable doubt as to Jasper's conviction for third degree DWLS, the court reversed that conviction. *Id.* at 538. However, it held the evidence did not taint Jasper's hit-and-run conviction. *Id.* at 538 n.9.

¶9 The Court of Appeals also held the trial court did not contravene Jasper's constitutional rights in responding to the deliberating jury's inquiries, reasoning that because the questions raised only issues of law, Jasper's right to be present was not implicated. *Id.* at 538. However, the appellate court concluded the trial court failed to comply with CrR 6.15(f)(2), accepting Jasper's contention that the judge did not consult with the parties or counsel before responding to the jury's questions. *Id.* at 543. Ultimately, the Court of Appeals found the error harmless given the nature of the questions and the trial court's response. *Id.* Noting this was the only alleged error affecting Jasper's conviction for hit-and-run, the Court of Appeals affirmed that conviction. *Id.* at 544.

¶10 Jasper petitioned this court for review of the issue whether the trial court violated his constitutional rights when it responded to the jury's inquiries. The State cross petitioned for review of the issue whether admission of the affidavit from the records custodian violated Jasper's right to confrontation. We granted both petitions at 170 Wn.2d 1025 (2011).

### State v. Cienfuegos

¶11 On April 15, 2005, Cesar Cienfuegos was stopped for speeding by Corporal Monica Matthews of the Washington State Patrol. Corporal Matthews determined that Cienfuegos's driving privilege was revoked and that Cienfuegos did not have an ignition interlock device installed in his vehicle, in violation of a previously entered court order. Cienfuegos was arrested.

¶12 The State charged Cienfuegos with DWLS in the first degree.[1] Cienfuegos was tried by jury in King County District Court. Corporal Matthews testified at trial and described the above events. To prove the charge, the State

---

[1] The State also charged Cienfuegos with failure to equip his vehicle with an interlock device, but this conviction was reversed due to a charging defect and is not before us.

presented a certified copy of driving record (CCDR) from DOL. The CCDR is comprised of three documents. The first document, exhibit 9, is a certified copy of an order of revocation, mailed to Cienfuegos and dated February 28, 2003. CP (Cienfuegos) at 459. The order notified Cienfuegos that he must stop driving on March 30, 2003 and that his driving privilege had been revoked for seven years due to his status as an habitual offender. The order also notified Cienfuegos that he could request a hearing on the matter and alerted him to procedures by which he could reinstate his driving privilege.

¶13 The second document, exhibit 10, is a certified cover letter signed under penalty of perjury by Denise Bausch, a DOL records custodian. CP (Cienfuegos) at 460. The letter asserts that attached "document(s) is/are a true and accurate copy of the document(s) maintained" by DOL regarding Cienfuegos's driving record. *Id.* It further states:

> After a diligent search of the computer files, the official record indicates on April 15, 2005, the following statements apply to the status of the above named person:
>
> Had not reinstated his/her driving privilege. Was suspended/revoked in the first degree. Subject was not eligible to reinstate his/her driving privilege on the above date of arrest.
>
> Had not been issued a valid Washington license.
>
> A notation has been placed on the driving record under RCW 46.20.720 stating that the person may operate only a motor vehicle equipped with an ignition interlock or other biological or technical device from 10/20/2002 to 10/20/2005.

*Id.*

¶14 The third document, exhibit 11, is a certified copy of an unredacted abstract of driving record (ADR), listing Cienfuegos's prior driving offenses. CP (Cienfuegos) at 461. Over Cienfuegos's objection, each exhibit was introduced into evidence and the jury found Cienfuegos guilty of first degree DWLS.

¶15 On appeal to the superior court, Cienfuegos argued the district court erred by admitting exhibit 10 in violation

of his right to confront witnesses. He contended the United States Supreme Court's decision in *Melendez-Diaz* overruled our cases regarding the admissibility of CCDRs. The State responded that Cienfuegos's right to confrontation had not been infringed, as our decision in *Kronich* survived *Melendez-Diaz* and is consistent with *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The superior court disagreed, stating:

> While the Washington Supreme Court previously held, pursuant to *Crawford*, that the admission of a CCDR does not violate the confrontation clause, the United States Supreme Court's decision in *Melendez-Diaz* effectively overrules *Kirkpatrick* and is binding on all Washington courts on this point of federal constitutional law. Under the Court's analysis in *Melendez-Diaz*, the CCDR is a testimonial affidavit, and the DOL official is a "witness" for purposes of the Sixth Amendment. Therefore, the CCDR was inadmissible without corresponding testimony from the DOL official who performed the diligent search, interpreted what was found, and opined as to its effect. Even particularized guarantees of trustworthiness do not get the CCDR past the Sixth Amendment.

CP (Cienfuegos) at 498 (citations omitted). Noting that exhibit 10 was the only direct evidence that Cienfuegos's revocation was still in effect on April 15, 2005, the superior court concluded there was insufficient evidence to support the conviction. *Id.* The court vacated the conviction and remanded the case for dismissal. CP (Cienfuegos) at 498, 500.

¶16 The superior court also ruled on a number of evidentiary issues. The court concluded that exhibit 11—the ADR—was inadmissible because it "contained no relevant information and contained a full recitation of Cienfuegos' criminal driving offenses." CP (Cienfuegos) at 499. The court also ruled that exhibit 11 was inadmissible under ER 404(b) and highly prejudicial. According to the court, "[t]he jury could well have taken this as propensity evidence as the document clearly lists DOL's actions and convictions for 'DWLS/R 1st DG.'" CP (Cienfuegos) at

499-500. Citing *State v. Smith*, 155 Wn.2d 496, 503-04, 120 P.3d 559 (2005), the court held that "[t]he phrase 'suspended or revoked in the first degree' appearing in the exhibits is a legal and factual fiction which was improperly admitted." CP (Cienfuegos) at 500. The court reasoned the phrase was "irrelevant and confusing to the jury" and its use "was not harmless error because of the similarity of the language with the offense charged, DWLS First Degree." *Id.* (emphasis omitted). Also, the court ruled that evidence showing that Cienfuegos was speeding at the time of the stop, and that he was arrested and jailed, was improper as irrelevant and prejudicial. The court concluded the admission of such evidence was not harmless error because it had no probative value and carried the prejudicial effect of describing Cienfuegos as a bad or dangerous driver. In light of the confrontation clause and evidentiary violations, the court vacated the conviction and remanded for dismissal.

¶17 The State filed a notice for discretionary review with the Court of Appeals. CP (Cienfuegos) at 493. The Court of Appeals, Division One, granted the motion. Because the case of *Moimoi* was already before the court and presented a similar issue on the scope of the confrontation clause, the Court of Appeals linked *Cienfuegos* with *Moimoi*. Meanwhile, Jasper's petition for review had been granted by this court. Recognizing this, the State moved to transfer *Cienfuegos* and *Moimoi* from Division One to this court and to consolidate the cases with *Jasper*. We granted the State's motion to transfer and consolidated the cases.

### State v. Moimoi

¶18 Laki Moimoi was charged in King County District Court with unregistered contracting, in violation of RCW 18.27.010 and RCW 18.27.020. A construction compliance inspector with the Department of Labor and Industries (DLI), Mathew Jackson, testified for the State. Jackson testified he was charged with investigating a citizen's complaint regarding Moimoi. He testified he had access to

a DLI database of contractors, which he could search to determine whether a particular contractor was registered. He further testified he checked the database and determined whether Moimoi was a registered contractor. He never revealed the results of the search to the jury.

¶19 During Jackson's testimony, the State admitted into evidence a certification authored by Pamela Bergman, the clerical supervisor for the contractor registration section of DLI. The following exchange took place:

> [State]: Again, Mr. Jackson, how—how did you determine whether or not Mr. Moimoi was a registered contractor?
>
> [Jackson]: Well, any time that we issue a civil infraction or a complaint with the King County Prosecutor's Office we obtain a search of the records letter, which is a sealed letter from the supervisor or the keeper of the records of—of the contractor file section. That person will type the letter out, basically stating the individual person's registration status and seal that letter as a—a authenticated document of that's [sic] person's status as a registered contractor.
>
> [State]: Mr. Jackson, I'm handing you what's been marked as State's Exhibit No. 1, do you recognize that?
>
> [Jackson]: Yes, I do.
>
> [State]: How do you recognize that?
>
> [Jackson]: This is the letter that I just explained to you about. It's from Pamela Bergman (phonetic) and Pamela is the keeper of the—the supervisor of the records—the files for the contractors in Olympia.

CP (Moimoi) at 51-52.

¶20 Bergman's certification states as follows:

> [W]e have searched our records from January 1980, to the present and are unable to locate a previous or current registration for Laki Moi Moi [sic] under that specific name located at 10118 Des Moines Memorial Drive, Seattle WA 98168 doing business as L & L Concrete, Seattle Concrete and Landscape as being registered with this section as a specialty or general contractor.

Mot. for Discretionary Review, App. C; CP (Moimoi) at 55.

¶21 Moimoi objected to the introduction of the certification on the ground it was made for purposes of litigation and was not routinely kept in the course of the agency's business. The district court overruled the objection, concluding it was a self-authenticating business record. The jury found Moimoi guilty.

¶22 Moimoi appealed to the superior court. There, Moimoi argued the certification is a testimonial statement, as described in *Melendez-Diaz*. The State argued to the contrary. The superior court ruled in favor of the State, stating, "This case, like *Kirkpatrick*, deals with records which are routinely maintained by a governmental agency, and is distinguishable from *Melendez-Diaz v. Massachusetts*, [557 U.S. 305], which deals with results of a test which was performed specifically for that litigation." CP (Moimoi) at 150. Moimoi filed a notice for discretionary review with the Court of Appeals, Division One. As described above, the case was transferred to this court for our review and consolidated with *Jasper* and *Cienfuegos*.

## ANALYSIS

I. Confrontation Clause Violation

■■ ¶23 The principal issue in these cases is whether certifications as to the existence or nonexistence of records are testimonial for purposes of the confrontation clause. An alleged violation of the confrontation clause is reviewed de novo. *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999). When a violation has occurred, we then review for harmless error. *Chapman v. California*, 386 U.S. 18, 21-22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).[2]

---

[2] In *Moimoi*, the State contends the constitutional argument was not adequately raised at trial and should therefore not be reviewed. We disagree. Though Moimoi did not directly reference the confrontation clause in objecting to the admission of the certification, we conclude his objection sufficiently preserved the issue for appeal. The constitutional ground was readily apparent from his claim

A. The Admission of Certifications into Evidence Violated the Defendants' Rights under the Confrontation Clause

■ ¶24 The Sixth Amendment's confrontation clause confers upon the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. As reflected in the constitutional text, the right "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Crawford*, 541 U.S. at 51 (alteration in original) (quoting 2 Noah Webster, an American Dictionary of the English Language (1828)). In *Crawford*, the United States Supreme Court announced the rule that testimonial statements may not be introduced into evidence unless the witness is unavailable and the defendant had prior opportunity to cross-examine the witness. *Id.* at 68. The *Crawford* Court noted, however, that certain statements "by their nature [are] not testimonial—for example, business records or statements in furtherance of a conspiracy." *Id.* at 56. But, the Court declined to provide "a comprehensive definition of 'testimonial,' " *id.* at 68, leaving courts to "develop[ ] their own interpretation of what is a 'testimonial statement' for Sixth Amendment purposes." *United States v. Martinez-Rios*, 595 F.3d 581, 585 (5th Cir. 2010).

¶25 In the companion cases of *Kirkpatrick*, 160 Wn.2d 873, and *Kronich*, 160 Wn.2d 893, we considered whether affidavits certifying the status of a defendant's driving privilege are testimonial statements covered by the Sixth Amendment. In *Kirkpatrick*, we addressed the specific issue "whether a DOL certification as to the absence of a

that the certification was a record prepared solely for use at trial, which does not qualify as a business or public record under RCW 5.45.020 or RCW 5.44.040. Such records are plainly subject to confrontation clause analysis. *See Crawford*, 541 U.S. 36. That Moimoi's objection was sufficient to apprise the court and counsel of the confrontation clause issue is supported by the fact that the State litigated the issue in the superior court without protest and supported Moimoi's motion for discretionary review on the sole issue of the alleged confrontation clause violation.

driver's license is testimonial for purposes of the *Crawford* analysis." 160 Wn.2d at 884. We held "that neither certification of DOL drivers' records nor certifications as to the absence of such records are testimonial for purposes of *Crawford.*" *Id.*

¶26 In assessing the character of the DOL certification, we adopted the rationale set forth by the Court of Appeals for the Ninth Circuit in *United States v. Cervantes-Flores*, 421 F.3d 825 (9th Cir. 2005) and the Court of Appeals for the Fifth Circuit in *United States v. Rueda-Rivera*, 396 F.3d 678 (5th Cir. 2005). *Kirkpatrick*, 160 Wn.2d at 884-86. Those cases held that similar certifications were not testimonial statements, reasoning that although the certifications were prepared for litigation, the documents such certifications addressed were " 'part of a class of documents that were not prepared for litigation.' " *Id.* at 885 (quoting *Cervantes-Flores*, 421 F.3d at 833). Recognizing this distinction, we analogized the DOL certification to nontestimonial business records, which exist prior to litigation. *Id.* at 885-86. We noted that like business records, driving records have long been held admissible. *Id.* at 886. And we refused to recognize a basis for treating a document certifying the nonexistence of a driver's record any differently than the driving record itself. *Id.* Both documents are "prepared by DOL records custodians for trial purposes" and are "produced according to the same process, based on identical requests from the relevant prosecutorial authorities." *Id.* at 887.

¶27 A slightly different certification was presented in *Kronich*. The defendant there was charged with DWLS in the third degree. *Kronich*, 160 Wn.2d at 898. To prove the charge, the State admitted into evidence a certified statement from DOL regarding the status of the defendant's driving privilege on the date of arrest. *Id.* The certification described the defendant's driving status as " 'suspended/ revoked.' " *Id.* at 897. We adhered to our reasoning in *Kirkpatrick* and held "such a record is not testimonial for purposes of the *Crawford* analysis." *Id.* at 902. We stated

that "[t]he admissibility of such documents under the confrontation clause should not 'turn on the content thereof when that content includes only verifiable facts, adduced by a government official in the regular course of his or her duties according to standardized procedure.'" *Id.* at 903 (quoting *Kirkpatrick*, 160 Wn.2d at 887).

¶28 The United States Supreme Court's decision in *Melendez-Diaz* casts doubt on *Kirkpatrick* and *Kronich*. In *Melendez-Diaz*, the Court considered whether " 'certificates of analysis' " introduced in a criminal prosecution were testimonial statements. 557 U.S. at 308. The certificates reported the results of a forensic analysis establishing that a seized substance was cocaine. *Id.* The Court held the certificates were "quite plainly affidavits," falling squarely within the " 'core class of testimonial statements' " described in *Crawford*. *Id.* at 310. The Court emphasized that the certificates were used for the purpose of establishing a fact at trial and thus were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " *Id.* at 310-11 (quoting *Davis v. Washington*, 547 U.S. 813, 830, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)). The Court also underscored the fact that "not only were the affidavits ' "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," ' *Crawford*, [541 U.S.] at 52, but under Massachusetts law the *sole purpose* of the affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance, Mass. Gen. Laws, ch. 111, § 13." *Id.* at 311.

¶29 In its discussion, the *Melendez-Diaz* Court rejected the government's attempt to distinguish the certificates from other statements that were more clearly testimonial. The government averred, for example, "that the analysts are not subject to confrontation because they are not 'accusatory' witnesses, in that they do not directly accuse petitioner of wrongdoing." *Id.* at 313. The Court dismissed

the argument as unsupported by either the constitutional text or the Court's case law. *Id.* It reasoned that "[t]o the extent the analysts were witnesses (a question resolved above), they certainly provided testimony *against* petitioner, proving one fact necessary for his conviction—that the substance he possessed was cocaine." *Id.*

¶30 The government also argued the certificate was akin to a business or public record and thus not testimonial. *Id.* at 321. In rejecting this argument, the Court explained that even if the certificates qualified as business records, they were nonetheless testimonial because they were created for use in court. *Id.* The Court made plain that "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. But this is not the case if the regularly conducted business activity is the production of evidence for use at trial." *Id.* (citation omitted).

¶31 In sum, the Court considered any document prepared for use in a criminal proceeding to be testimonial. It observed one exception: "a clerk's certificate authenticating an official record—or copy thereof—for use as evidence." *Id.* at 322. Yet, the Court stressed that at common law, "a clerk's authority in that regard was narrowly circumscribed. He was permitted 'to certify to the correctness of a copy of a record kept in his office,' but had 'no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect.' " *Id.* (quoting *State v. Wilson*, 141 La. 404, 409, 75 So. 95 (1917)). Thus, "[a] clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Id.* at 322-23.

¶32 Though not strictly necessary to resolve the case, the Court opined that a clerk's certification used to prove the absence of a public record is testimonial in nature and thus demands confrontation at trial:

Far more probative here are those cases in which the prosecution sought to admit into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it. Like the testimony of the analysts in this case, the clerk's statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched. Although the clerk's certificate would qualify as an official record under respondent's definition—it was prepared by a public officer in the regular course of his official duties— and although the clerk was certainly not a "conventional witness" under the dissent's approach, the clerk was nonetheless subject to confrontation.

*Id.* at 323.

¶33 Shortly after issuing *Melendez-Diaz*, the Court signaled its intent to follow this dicta. In *United States v. Norwood*, the Court vacated a Ninth Circuit judgment that had declared that a clerk's affidavit, certifying that a diligent search was performed and that no record existed, was not testimonial. 555 F.3d 1061 (9th Cir. 2009), *vacated*, 558 U.S. 983 (2009). The Court remanded "for further consideration in the light of *Melendez-Diaz*." *Norwood*, 558 U.S. 983. On remand, the government conceded the admission of the certification violated the defendant's right to confrontation. *United States v. Norwood*, 595 F.3d 1025, 1030 (9th Cir. 2010).

¶34 A substantial majority of courts have held since *Melendez-Diaz* that clerk certifications attesting to the nonexistence of a public record are testimonial statements subject to confrontation. *See, e.g., Martinez-Rios*, 595 F.3d at 586 (overruling *Rueda-Rivera* and holding admission of a certificate regarding the nonexistence of immigration records violated the defendant's Sixth Amendment confrontation right); *United States v. Orozco-Acosta*, 607 F.3d 1156, 1161 n.3 (9th Cir. 2010) (overruling *Cervantes-Flores* and holding admission of a certificate regarding the nonexistence of immigration records violated the defendant's Sixth Amendment confrontation right); *United States v. Villacana-*

114

*Ochoa*, No. CR-10-0013-WFN-1, 2010 WL 3584013, at *2, 2010 U.S. Dist. LEXIS 144357, at *6-7 (E.D. Wash. 2010) (holding certificate of nonexistence of a record was testimonial and prepared for use at trial but the confrontation clause was not violated because the defendant had the opportunity to cross-examine the official who signed the certificate); *United States v. Montalvo-Rangel*, No. SA-10-CR-64, 2010 WL 1484708, at *2, 2010 U.S. Dist. LEXIS 36323, at *6-7 (W.D. Tex. 2010) (concluding certificate as to the nonexistence of a record was testimonial but the confrontation clause was not violated because the defendant was able to cross-examine an immigration official who worked alongside the official who actually signed the record); *Gov't of Virgin Islands v. Gumbs*, 426 F. App'x 90, 93-94 (3d Cir. 2011) (unpublished) (holding certificate as to nonexistence of a firearms license is testimonial); *United States v. Madarikan*, 356 F. App'x 532, 534-35 (2d Cir. 2009) (unpublished) (holding the trial court erred in admitting a certificate of nonexistence of record regarding the defendant's ability to reenter the United States); *Tabaka v. District of Columbia*, 976 A.2d 173, 175-76 (D.C. 2009) (holding a certificate from a motor vehicles official, which certified to the absence of any records showing that defendant was issued an operator's permit, was testimonial); *Washington v. State*, 18 So. 3d 1221, 1223-24 (Fla. Dist. Ct. App. 2009) (holding a certificate of nonlicensure is testimonial); *Commonwealth v. Parenteau*, 460 Mass. 1, 8-9, 11, 948 N.E.2d 883 (2011) (holding a certificate from the department of motor vehicles, attesting to the fact that a notice of license suspension or revocation was mailed to defendant, was testimonial, violated the confrontation clause, and was not harmless beyond a reasonable doubt (citing *Jasper*, 158 Wn. App. at 531-32)).

¶35 We now follow suit. The federal opinions relied upon in *Kirkpatrick* and *Kronich* have been expressly overruled. *Orozco-Acosta*, 607 F.3d at 1161 n.3 (*Cervantes-Flores* and its progeny are "clearly inconsistent with *Melendez-*

*Diaz*" and must be overruled to the extent they are irreconcilable with that case); *Martinez-Rios*, 595 F.3d at 585-86 ("The government concedes that *Melendez-Diaz* implicitly overruled *Rueda-Rivera*, and we agree."). The certificates used in each case before us are plainly affidavits, falling within the " 'core class of testimonial statements' " described in *Crawford* and *Melendez-Diaz*. *Melendez-Diaz*, 557 U.S. at 310. They were created, and in fact used, for the sole purpose of establishing critical facts at trial. Because each certificate was " 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' " *id.* (internal quotation marks omitted) (quoting *Crawford*, 541 U.S. at 52), they are testimonial and require confrontation to comport with the Sixth Amendment.

¶36 Further, the certificates go beyond mere *authentication* of otherwise admissible public records. They " 'furnish, as evidence for the trial of a lawsuit, [the clerk's] interpretation of what the record contains or shows, [and] certify to its substance or effect.' " *Id.* at 322 (quoting *Wilson*, 141 La. at 409). They also "serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched." *Id.* at 323.

¶37 The State urges us to stand by our decisions in *Kirkpatrick* and *Kronich*, arguing that the Supreme Court appears poised to retreat from its expansive view of *Crawford*. It notes that after *Melendez-Diaz*, the Court in *Michigan v. Bryant*, 562 U.S. ___, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011), seemed again interested in reliability as part of the confrontation clause analysis. *See* Suppl. Br. of Resp't at 14. And, the State suggests the retirement of Justices Stevens and Souter may lead the Court to reexamine the term "witnesses against" in the Sixth Amendment—language we found significant in *Kirkpatrick*. Suppl. Br. of Resp't at 20-21; *see Kirkpatrick*, 160 Wn.2d at 883. The State even goes so far as to suggest that based on his questions at oral argument in *Bryant*, Justice Breyer may

have second thoughts about his vote in *Crawford*. Suppl. Br. of Resp't at 21. While the State's musings provide for interesting speculation, we must decide this case based upon United States Supreme Court precedent to date.

¶38 The Court in *Melendez-Diaz* rejected the rationale underlying our opinions in *Kirkpatrick* and *Kronich*, emphasizing that confrontation clause analysis does not focus on the nature of the particular records addressed by the certification, but on the nature of the certification itself. *Melendez-Diaz*, 557 U.S. at 328. Most recently, in *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011), the Court signaled it remains focused on the testimonial nature of certifications and the need to cross-examine the government agents who prepare them. *See* 131 S. Ct. at 2715 ("This Court settled in *Crawford* that the 'obviou[s] reliab[ility]' of a testimonial statement does not dispense with the Confrontation Clause." (alterations in original)); *id.* at 2715 n.7 ("Even so, [the analyst's] testimony under oath would have enabled Bullcoming's counsel to raise before a jury questions concerning [his] proficiency, the care he took in performing his work, and his veracity."). After *Melendez-Diaz*, it is difficult to regard certifications of the type here (especially those attesting to the nonexistence of official records) as akin to business records, which may be admitted into evidence without confrontation. Instead, as other courts have recognized since *Melendez-Diaz*, they are best understood as testimonial statements falling within the ambit of the Sixth Amendment. Accordingly, we hold the clerk's affidavits involved in these three cases are testimonial statements and we overrule *Kirkpatrick* and *Kronich* to the extent those opinions are contrary to United States Supreme Court precedent. Because the defendants were not given the opportunity to cross-examine the official who authored the certifications, the admission of the certifications into evidence violated the defendants' rights under the confrontation clause.

## B. The Unconstitutional Admission of Certifications Was Not Harmless beyond a Reasonable Doubt

 ¶39 "Confrontation Clause errors [are] subject to *Chapman* harmless-error analysis." *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Under this standard, the State must show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24; *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980).

> Whether such an error is harmless in a particular case depends upon a host of factors . . . includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684.

### State v. Jasper

 ¶40 We hold the constitutional error in admitting the affidavit was not harmless beyond a reasonable doubt as to Jasper's DWLS conviction. There is a reasonable probability the use of the inadmissible evidence was necessary to find Jasper guilty of the crime charged. To convict Jasper of DWLS in the third degree, the State was required to prove that Jasper's license was suspended or revoked because he failed to "furnish proof of financial responsibility for the future," RCW 46.20.342(1)(c)(ii), or he "failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation," RCW 46.20.342(1)(c)(iv).

¶41 Although Jasper admitted his license was suspended, both at trial and at the time of arrest, there was no

testimony bearing on the *reason* Jasper's license was suspended. Such evidence came solely from the unconstitutionally admitted affidavit. The two DOL records indicate Jasper's license was to be suspended on June 28, 2007 if he failed to provide proof he had satisfied court requirements regarding citations he received for driving without insurance and for violating vehicle registration laws. The letters do not show Jasper's license was actually suspended for these reasons, nor do the letters demonstrate Jasper's license was suspended on the date of arrest and for reasons that support a conviction for DWLS in the third degree. Because we cannot say "beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error," *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), the error was not harmless. We affirm the Court of Appeals' reversal of his conviction.

¶42 As for Jasper's hit-and-run conviction, the Court of Appeals correctly concluded it was not tainted by the confrontation clause violation, and ample evidence supported that conviction. *Jasper*, 158 Wn. App. at 538 n.9.

### State v. Cienfuegos

¶43 In *Cienfuegos*, the State argues that even if exhibit 10 is testimonial and was therefore improperly placed into evidence, any error was harmless in light of other evidence presented at trial. It points to exhibit 9, contending this document establishes that Cienfuegos's license was revoked for seven years beginning in 2003. Contrary to the State's assertion, however, exhibit 9 does not establish the crime charged. It does not prove Cienfuegos's driving privilege was revoked on the date he allegedly committed the offense, April 15, 2005. Nor does the document establish Cienfuegos's license was revoked on April 15, 2005 because he was an "habitual offender," as required to establish the crime of DWLS in the first degree. *See* RCW 46.20.342(1)(a).

¶44 The State also contends the admission of exhibit 10 was not harmful in light of exhibit 11—the abstract of

Cienfuegos's driving record. This argument cannot be sustained. During closing, the prosecutor placed heavy reliance on exhibit 10. CP (Cienfuegos) at 399, 402, 405. The prosecutor went so far as to proclaim that exhibit 11 was "admittedly . . . difficult to read" and explicitly encouraged the jury to instead rely on the summary provided in exhibit 10. CP (Cienfuegos) at 400. Because exhibit 10 was a key piece of evidence in the case against Cienfuegos, the State has not carried its burden of showing the error was harmless beyond a reasonable doubt. We affirm the superior court's reversal of Cienfuegos's conviction.

### State v. Moimoi

¶45 In arguing that any constitutional error was harmless, the State points to Moimoi's testimony stating he had "no idea" whether he had a contractor's license with DLI. CP (Moimoi) at 116. The State views this as a concession that Moimoi never applied for or received licensing from the department. The State also calls attention to Mr. Jackson's testimony. Mr. Jackson testified he was assigned to investigate a complaint against Moimoi. He testified he checked to see whether Moimoi was registered as a contractor and then requested a certified letter from the custodian of records, Ms. Bergman, stating that Moimoi was not registered.

¶46 The problem with the State's argument is the certification was the only evidence presented by the prosecution that Moimoi was in fact not registered with DLI. That Moimoi had "no idea" whether he was registered is not dispositive of guilt, nor is Jackson's testimony. Importantly, Jackson never revealed the results of his own search of the contractor database. Instead, he testified only that he made a determination of Moimoi's contractor status, without saying what that status was. Thus, the certification was critical to the State's case. We reverse the superior court and hold the constitutional error was not harmless beyond a reasonable doubt.

## C. Retrial (Not Dismissal) Is the Appropriate Remedy

¶47 After holding the admission of exhibit 10 violated Cienfuegos's right to confrontation, the superior court ordered that the conviction be vacated and the case remanded for dismissal. CP (Cienfuegos) at 498. The court stated that "[w]ithout this improperly admitted exhibit, the evidence is likely insufficient to support his conviction." *Id.* The superior court erroneously applied the remedy for insufficient evidence rather than the remedy for constitutional error occurring at trial.

¶48 Generally, when evidence is admitted at trial and later held to violate the confrontation clause, the proper remedy is to remand for retrial. *See State v. Darden*, 145 Wn.2d 612, 628, 41 P.3d 1189 (2002); *see also State v. Hendrickson*, 138 Wn. App. 827, 833, 158 P.3d 1257 (2007). The superior court erred by examining the sufficiency of the evidence after excluding the unconstitutionally admitted exhibit. As made plain by the United States Supreme Court, "the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction." *Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). The appropriate remedy here is to reverse the defendants' convictions (except for Jasper's hit-and-run conviction) and to remand for new trials.[3]

---

[3] The State also argues the superior court erred in reversing Cienfuegos's conviction based on certain evidentiary rulings made by the district court. Given our resolution of the confrontation clause issue, we do not address these evidentiary rulings because Cienfuegos is entitled to a new trial as a result of the unconstitutional admission of the testimonial certification.

## II. Jasper Has Not Shown the Trial Court Violated His Rights by Responding to Questions from the Jury during Deliberations

¶49 Jasper claims the trial court violated his rights under the Sixth Amendment to the United States Constitution, the due process clause of the Fourteenth Amendment, and article I, section 22 of the Washington State Constitution by responding to jury inquiries without consulting his counsel and without allowing Jasper to be present. His Court of Appeals briefing offers an extensive *Gunwall* analysis to advance an independent interpretation of article I, section 22.[4]

¶50 The Court of Appeals rejected Jasper's claim. It reasoned that because the jury's inquiries raised no factual issues, but instead only matters of law, the court's response to the jury questions did not involve a critical stage of the proceedings to which Jasper's right to be present attached. *Jasper*, 158 Wn. App. at 539-40. In the course of its analysis, the appeals court rejected Jasper's contention that article I, section 22 provides greater protection than the Sixth Amendment. *Id.* at 539 n.12. However, the court concluded the trial court failed to comply with CrR 6.15(f)(2), accepting Jasper's contention that the judge did not consult with the parties or counsel before responding to the jury's questions.[5] *Id.* at 540-41. Ultimately, the Court of Appeals

---

[4] In *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808 (1986), this court set forth six nonexclusive criteria to be considered when determining whether a provision of our state constitution should be interpreted independently from its federal analogue: (1) the textual language, (2) differences in the texts, (3) constitutional history, (4) preexisting state law, (5) structural differences, and (6) matters of particular state or local concern.

[5] CrR 6.15(f)(1) states:

The jury shall be instructed that any question it wishes to ask the court about the instructions or evidence should be signed, dated and submitted in writing to the bailiff. The court shall notify the parties of the contents of the questions and provide them an opportunity to comment upon an appropriate response. Written questions from the jury, the court's response and any objections thereto shall be made a part of the record. The court shall respond to all questions from

concluded the violation of the rule was harmless and affirmed Jasper's hit-and-run conviction. *Id.* at 544.

¶51 Jasper then moved for reconsideration, which the Court of Appeals denied. But, in response to the motion for reconsideration, the Court of Appeals changed its opinion by adding footnote 13. The footnote sheds light on the parties' dispute as to whether Jasper and his counsel were in fact not consulted before the trial court responded to the jury's inquiries:

> Jasper affirmatively contends that both he and counsel were absent during the trial court's resolution of the jury's questions. "The jury gave both questions to the court at 1:42 p.m., and the court returned both answers to the jury at 1:50 p.m. The clerk's minutes otherwise detail the presence and involvement of the parties in matters conducted both on and off the record and yet the minutes contain no indication that the court discussed the jury's questions with counsel or Jasper." Br. of Appellant at 20-21.
>
> The State agrees that the only indication that Jasper or his counsel were consulted is the trial court's standard, preprinted response form, which states: "**COURT'S RESPONSE**: (AFTER AFFORDING ALL COUNSEL/PARTIES OPPORTUNITY TO BE HEARD)." The State concedes that "[t]he record is silent as to whether Jasper and/or his counsel were informed of the jury inquiry, except for the notation on the preprinted form, which stated that all parties had been afforded the opportunity to be heard." Br. of Resp't at 27.
>
> In the event that contact with counsel was made by the trial court, the record is silent as to Jasper's counsel's suggested response, if any, to the jury inquiries. Similarly absent is any indication as to Jasper's counsel's response, if any, to the trial court's suggested answers to the jury's inquiries.
>
> Faced with this record, the State does not urge affirmance based on compliance with the court rule. Rather, the State contends that "[a]ssuming, *arguendo*, that the trial court's failure to consult Jasper or his counsel before answering the jury's question was error, the error is harmless." Br. of Resp't at 32.

---

a deliberating jury in open court or in writing. . . . Any additional instruction upon any point of law shall be given in writing.

> *Accordingly, we assume the facts as urged by Jasper in resolving this issue.*
>
> Following the initial filing of this opinion, the State filed a pleading that we categorized as a motion for reconsideration. Appended to the pleading was a copy of a letter from the trial court to counsel. The gist of the letter is the trial judge's assertion that telephone contact with trial counsel was made upon receipt of the jury's inquiry. Jasper filed a response to the motion, correctly citing to applicable rules which preclude supplementation of the appellate record in this fashion.
>
> To the extent that the State's purpose was to afford readers of this opinion with the trial court's recollection of circumstances, this mention should accomplish that purpose. Jasper is correct, however, in noting that our rules preclude any grant of relief to the State as a result of the motion or its attachment.
>
> This all points to a greater issue. We are sympathetic to trial judges who receive a copy of the appellate opinion in a matter over which they presided and who believe that the factual recitation therein is incomplete. In this regard, however, we are subservient to the trial court. Only those matters about which the trial court allows or causes a record to be made are available for us to review. As has often been observed, for purposes of appellate review, there is virtually no difference between a trial event that did not take place and a trial event that took place but about which no record was made.

*Id.* at 540 n.13 (last emphasis added).

¶52 The footnote makes clear the Court of Appeals assumed—based on the nonexistence of facts—that the trial court did not contact counsel and that Jasper was not present when the trial court considered and responded to the jury inquiries. *See id.* ("we assume the facts as urged by Jasper in resolving this issue").

¶53 Despite the Court of Appeals' extended explanation, its assumptions about what happened at trial are unwarranted. It is a well established principle that

> "[o]n a partial or incomplete record, the appellate court will presume any conceivable state of facts within the scope of the

pleadings and not inconsistent with the record which will sustain and support the ruling or decision complained of; but it will not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent."

*Barker v. Weeks,* 182 Wash. 384, 391, 47 P.2d 1 (1935) (quoting 4 C.J. *Appeal and Error* § 2666, at 736 (1916)); *see State v. McFarland,* 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed concurrently with the direct appeal.").

¶54 To the extent the Court of Appeals intimates the State has conceded that neither counsel nor Jasper was contacted or present, the Court of Appeals misstates the State's position. The State has not conceded this point. *See* Br. of Resp't at 26-27; *see also* Suppl. Br. of Resp't at 25-26.

¶55 The only fact in the record supporting Jasper's claim that he was not present during the trial court's consideration of the jury inquiries was that eight minutes elapsed between receipt of the questions and the court's response to the jury. Jasper also relies on the absence of a minute entry. Such evidence does not establish that Jasper and his lawyer were not contacted or, for that matter, were not present when the trial court considered the inquiries. The record reflects that the trial court judge pressed the lawyers two times to provide their telephone numbers so they could be contacted. VRP (Jasper—Mar. 12, 2009) at 28, 33. The record also reflects that Jasper was not in custody during the trial. CP (Jasper) at 2-4, 115. Importantly, the written response itself states that the trial court contacted the parties before responding. CP (Jasper) at 50, 52. While Jasper complains that this language was part of a preprinted form, we do not lightly assume that a judge falsely attaches a signature to a court form.

¶56 Given the state of the record, Jasper failed to shoulder his burden to demonstrate a constitutional violation. Accordingly, we decline to entertain his claim on the merits.

CONCLUSION

¶57 Under the United States Supreme Court's decision in *Melendez-Diaz*, the certifications at issue in these cases are testimonial statements To the extent our opinions in *Kirkpatrick* and *Kronich* hold otherwise, they are overruled. Because the defendants did not have the opportunity to cross-examine the individuals who prepared the certifications, the admission of the certifications into evidence violated the defendants' rights under the confrontation clause. And, except with respect to Jasper's hit-and-run conviction, the unconstitutional admission of the certifications was not harmless beyond a reasonable doubt.

¶58 We decline to address the issue whether the trial court in *Jasper* violated the defendant's constitutional rights in responding to questions from the jury during deliberations. Jasper has not factually supported his claim. Accordingly, we affirm the Court of Appeals in *Jasper*, affirm the superior court in *Cienfuegos*, and reverse the superior court in *Moimoi*. We reverse the affected convictions and remand for further proceedings consistent with this opinion.

MADSEN, C.J.; C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and WIGGINS, JJ.; and ALEXANDER, J. PRO TEM., concur.