# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68606-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| YEVGENI OSTROVSKI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 16, 2013 |

SPEARMAN, J. — Yevgeni Ostrovski appeals his conviction for second degree assault, arguing the trial court admitted a nonverbal identification of a knife by a witness who was unavailable for trial in violation of his confrontation rights. The State concedes error but argues that the error was harmless. Because the knife was properly admitted based on untainted testimony provided by other witnesses, the error was harmless. We also reject the claims in his statement of additional grounds and affirm.

## FACTS

Just before 11:00 p.m. on August 20, 2011, Tatiana Brodiski called 911 and reported that her husband, Yevgeni Ostrovski, had a large knife and threatened to kill her, their child, and himself. In broken English and her native Russian, Brodiski cried and screamed during the call, telling the 911 operator that she had taken the knife from her husband, thrown the knife under the table, and run from the house to hide in a boat in a neighbor's yard.

When Mercer Island Police arrived at their home, they found Ostrovski sitting outside on the patio with his friend Gennady Belyaev. While the officers

were questioning the men, Ostrovski's daughter J.B., who was visibly upset, came out on the patio. J.B. told an officer that she had seen her father hold a knife against her mother's neck and heard him say that he was going to kill her mother and then kill himself. J.B. told the officer she believed her father would kill her mother and then kill her. The police arrested Ostrovski.

The State charged Ostrovski with second degree assault while armed with a deadly weapon and two counts of felony harassment. Based on incidents occurring after the arrest, the State charged Ostrovski with witness tampering and six counts of misdemeanor violation of a no contact order.

At trial, the State called Mercer Island Police Corporal David Herzog as its first witness. Herzog testified that he learned from the dispatcher that there "was a domestic violence that had occurred involving a knife." Verbatim Report of Proceedings (VRP) (12/13/2011) at 78. When he arrived at the home, Herzog saw two males sitting on the patio and kept them there for questioning. Herzog explained, "I didn't want them to go back inside the house because . . . I didn't want them if they did have a knife to go back in there and use it[.]" VRP (12/13/2011) at 81. Herzog determined that the men were Ostrovski and Belyaev, who was a family friend or roommate. When J.B. came out to the patio and Ostrovski began speaking to her, Herzog separated them, sending another officer to speak to J.B. elsewhere.

After another officer arrested Ostrovski and took him away from the house, Herzog assisted other officers in taking statements. Herzog testified, "After [J.B.] and the witness told us, I asked them where the knife was that we had the

information that was used, and the roommate went to the kitchen counter and pointed out where the knife was." VRP (12/13/2011) at 97. Defense counsel objected on hearsay grounds, but the trial court overruled the objection. Herzog described the knife and testified that another officer photographed it and placed it into evidence. Officer Peter Erickson later identified a knife he retrieved from the evidence room and the trial court granted the State's motion to admit the knife into evidence.

Although the 911 call and their prior statements to the police were admitted at trial as excited utterances, both Brodiski and J.B. testified that Ostrovski had not threatened them. Brodiski testified that she had been drinking on the night of the incident when she began bickering with Ostrovski while he chopped salad. She testified that she overreacted because she has a fear of knives. J.B. testified that when she came out of her room and saw her parents arguing while her father chopped salad, she "freaked out like [she] got mixed messages," and continued crying after she "heard them calm down" because she didn't like hearing them argue. VRP (12/15/11) at 80, 83. Both Brodiski and J.B. identified the knife in evidence as the knife Ostrovski had used to chop salad.

The jury acquitted Ostrovski on the charge of felony harassment as to J.B. but found him guilty of the remaining charges. The trial court imposed an exceptional sentence below the standard range.

Ostrovski appeals.

## DISCUSSION

Ostrovski contends that the trial court violated his constitutional confrontation rights by allowing Corporal Herzog to testify about Belyaev's nonverbal identification of the knife. The State concedes that the trial court should have sustained defense counsel's hearsay objection and stricken the testimony because Belyaev had left the country and was unavailable for cross-examination. However, the State contends that the error was harmless beyond a reasonable doubt.

Confrontation Clause errors are subject to harmless error analysis. State v. Jasper, 174 Wn.2d 96, 117, 271 P.3d 876 (2012) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431 L.Ed.2d 674 (1986)). The State bears the burden of proving beyond a reasonable doubt that the error was harmless. Id. We look to the "untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." State v. Guloy, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985) (citing Parker v. Randolph, 442 U.S. 62, 70-71, 99 S. Ct. 2132, 2137-34, 60 L.Ed.2d 713 (1979)).

Ostrovski argues that the jury may have accepted the version of events Brodiski and J.B. offered at trial were it not for the testimony of Belyaev's identification of the knife. He also contends that Brodiski's identification of the knife was "somewhat equivocal," [Brief of Appellant at 23] because she said "I think so, yeah. Yes," when asked whether she recognized the exhibit as one of her kitchen knives. VRP (12/15/2011) at 25. Finally, he claims that the jury may

4

not have believed that the knife admitted into evidence was a deadly weapon or was the knife used by Ostrovski because Brodiski testified that she threw the knife under the table but J.B. testified that Brodiski put it on the counter.

But Ostrovski does not contend that the knife was not properly admitted into evidence. The jury heard the 911 recording in which the Russian interpreter translated Brodiski's report that Ostrovski "had a large knife" when he threatened to kill her. (Pretrial Exhibit 2 at 5). J.B. told police on the night of the incident that she saw Ostrovski hold a knife against her mother's throat. Although Brodiski and J.B. testified differently as to the use of the knife at trial, they both admitted that Ostrovski was holding a knife during an argument in the kitchen and they both agreed that the knife admitted into evidence was the same knife he held. Under these circumstances, we are convinced beyond a reasonable doubt that the improper admission of the fact that Belyaev pointed to the location of the knife "that was used" was harmless.

In his statement of additional grounds, Ostrovski contends that (1) the trial court violated his right to a speedy trial and deprived him of the opportunity to confront Belyaev at trial by granting a continuance to the State over defense counsel's objection on October 21, 2011; (2) the jail miscalculated his good time credits; (3) the witness statements about the location of the knife were "inconsistent;" and (4) the quality of J.B.'s translation between English and Russian for the investigating officers "is in question." The third ground appears to duplicate the issue presented by counsel on appeal and is too conclusory to permit review. See RAP 10.10(c) (appellate court will not consider argument in

5

statement of additional ground for review if it does not inform the court of the nature and occurrence of the alleged errors). The other allegations appear to involve matters outside of the record and therefore cannot be considered on appeal. See State v. McFarland, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

Affirmed.

Spearman, J.

WE CONCUR: