

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE APR 1 8 2019

CHIEF JUSTICE

This opinion was
filed for record
at 8:00 on 4-18-2018

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 95528-0 |
| Respondent, | ) | |
| v. | ) | En Banc |
| MICHAEL I. BURNS, | ) | |
| Petitioner. | ) | |
| | ) | Filed _____ APR 1 8 2019 _____ |

JOHNSON, J.—This case involves, first, whether Michael Burns was improperly denied his right to waive counsel and represent himself at trial and, second, whether he may assert a violation of the confrontation clause for the first time on appeal. The trial court judge denied Burns's request to proceed pro se based on a lack of understanding of the nature of the charges against him where he indicated that the criminal charges did not pertain to him and that he had not entered into a contract such that the State could bring charges against him. Burns claimed on appeal that his right to confrontation was violated when statements of his victim came in as evidence through testimony of her neighbor and the

responding police officer, although she herself did not testify. Burns did not object to the testimony on confrontation grounds at trial. The Court of Appeals held that the trial court judge did not abuse her discretion in denying Burns's request to proceed pro se and that Burns waived his right to assert a confrontation violation when he did not object at trial. We affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

The State charged Michael Burns with assault in the second degree—domestic violence, and felony violation of a no contact order—domestic violence, for strangling Christina Jackson while a no contact order was in effect.[1] Clerk's Papers (CP) at 25-27.

At one of his first court appearances, Burns said, "I just want to request new legal representation" because "I haven't been represented the way I see fit." Verbatim Report of Proceedings (VRP) (Dec. 10, 2015) at 17. The trial court informed Burns that he was not entitled to a public defender of his choosing.

After numerous requests to proceed pro se, the court held a hearing on January 13, 2016 regarding Burns's request to represent himself. At the hearing Burns stated,

---

[1] Burns also had two other felony cases with multiple charges pending against him that the court referenced at his hearing on self-representation.

I would like to go pro se for reasons other than just becoming aware of certain things. And furthermore, I just, you know, I'd rather handle my own business considering certain matters especially when I've gotten lied to, threatened, and coerced into certain things that I wasn't aware of at the time but I am aware of now. So I would like to go pro se because of those certain aspects of things so.

VRP (Jan. 13, 2016) at 2-3. The court then began to explain the nature of the charges in all three of Burns's pending cases. Interrupting this explanation, Burns stated, "These matters being spoken of do not pertain to me, okay?" and the following exchange occurred:

THE COURT: You say these charges don't pertain to you. It looks to me like they do. You've been charged and we're here in court, why don't they pertain to you in your view?

MR. BURNS: Because they don't. I'm not a corporate entity, I'm a human being, and I'm not contracted into your place of business. Furthermore, I will not be contracted in your place of business, okay.

THE COURT: Well, the law doesn't require any contract if a person is accused of a crime, the person is tried in a court whether they agree to that or not. And so you've been charged with some serious crimes and if there is a trial and you're convicted of those crimes you'll be serving sentences for those crimes. It's my job to make sure that you understand exactly how serious those sentences could be and that's why I'm going through all of the crimes and all of the potential sentences.

MR. BURNS: Ma'am, I understand completely what you're talking about. I understand that there is some, I, you know, somebody could be charged and sentenced to a serious amount of time for those matters, but like I said, they do not pertain to me and I'm not going to allow this. I would like to relieve counsel of their duties so I can become pro se.

*State v. Burns*, No. 95528-0

VRP (Jan. 13, 2016) at 6-7.

The court continued explaining the pending charges against Burns and the potential sentences and fines associated with all three cases. When asked about his education, Burns stated, "I don't think that really matters." VRP (Jan. 13, 2016) at 11. When the court inquired further, Burns said, "I think I'm highly educated enough to represent myself because other than maybe a little looking into a few things about the law I think I can handle it because it's mostly just keeping your composure and acting." VRP (Jan. 13, 2016) at 11. The court explained that Burns would be held to the same standards as the prosecution and would have to abide by the rules of procedure and evidence. Burns replied,

> I completely understand everything that I'm up against, okay, Your Honor? I completely understand what is up, what sentencing may occur, all of that stuff. I completely understand all of that and it doesn't phase [sic] me a bit. And, you know, I just, I made a mistake on asking for a public defender because I, I have a right to be represented as I see fit and the only person that's going to represent me as I see fit is me so that's why I'm here today, Your Honor.

VRP (Jan. 13, 2016) at 13.

The court then inquired into the alleged threats and coercion that Burns referred to at the beginning of the hearing, and the following exchange occurred:

4

MR. BURNS: My lawyer. . . . [S]he has tried to get me to sign this contract that I'm not going to, I'm not going to sign. I'm not going to -- and furthermore, her and [the prosecutor] have coerced me into opening a contract without my knowledge or consent and I shot that down.

THE COURT: I don't know what you are referring to as a contract.

MR. BURNS: Well, it is a contract.

THE COURT: Well, what is it? What are you talking about?

MR. BURNS: It's a contracts [sic] in the corporation and I'm not buying.

THE COURT: What's the corporation that you're referring to?

MR. BURNS: It's, the corporation is the United States, Your Honor, and I am not a citizen of that corporation. So I am not, I'm here to stand here today and tell you that I want to represent myself as pro se and I'm not buying into the company, okay? And I demand --

THE COURT: Mr. Burns, do you believe there's a corporation involved in the prosecution of these charges?

MR. BURNS: Yes, there always is.

VRP (Jan. 13, 2016) at 14-15.

At this point, the court and the attorneys had a discussion regarding Burns's competency to stand trial. Burns's attorney indicated she did not see a reason to get a competency evaluation. The prosecutor described Burns's past requests to proceed pro se and indicated, while he was not asking for a competency evaluation, he was concerned as to whether Burns could make a knowing, voluntary, and intelligent waiver of counsel based on Burns's representations to the court.

Burns again indicated, "I would love to waive counsel period." VRP (Jan. 13, 2016) at 19. Then the following exchange occurred:

5

THE COURT: I understand that. The question for me, as [the prosecutor] pointed out, is whether you're able to do that with full understanding of the situation that you're in. And, frankly, I am concerned that you don't seem to have a full understanding of the situation you're in because just observing you you've not, you've been very impatient for me to finish describing the charges and potential penalty to you, you've indicated that doesn't matter to you.

MR. BURNS: Oh, it matters.

THE COURT: You also indicated a belief that there is a corporation involved here that you were required to be involved with and that your not being involved with the corporation has something to do with your, with the fact that you're going to have to go to trial. And you've said that you don't believe the charges against you apply to you. I've tried to explain that they very much apply to you.

MR. BURNS: It's not a case, Your Honor.

THE COURT: You have trial in those cases because you've been charged with these crimes. So all in all I'm concerned about whether you understand how the criminal system works and what the consequences of criminal charges can be. And if you don't understand how that legal system works and what the results of being charged with a crime can be, you're going to need legal help.

MR. BURNS: Your Honor, from what I just said I, my understanding is that Mr. Burns is contracted into two cases that have been globalized into one matter, okay. There is a matter at your fingertips that is not a case yet, I have rejected the contract for it to become a case and --

VRP (Jan. 13, 2016) at 19-21.

At this point, the court cut Burns off and again attempted to explain the three separate cases against Burns. The judge then denied Burns's motion to proceed pro se explaining, "I don't think that Mr. Burns understands the nature of the charges and the seriousness of the situation" and "Mr. Burns, is not in my view competent

to represent himself." VRP (Jan. 13, 2016) at 22. The judge further indicated she would leave any competency concerns to counsel.

After a brief recess off the record, Burns was removed from the courtroom because of his disruptive behavior in reaction to the denial of the motion. The parties then discussed a written order, and the judge indicated she could not find that Burns knew enough about the charges against him to make a knowing waiver of his right to counsel. The court then filed a written order, which stated that the court was concerned Burns did not appreciate the nature of the charges against him and that the court was unable to find he could knowingly and voluntarily waive his right to counsel.

The trial court held another motion hearing on the issue of representation on May 3, 2016. The court again denied the motion, again based on Burns not knowingly and intelligently waiving his right to counsel as he did not understand the nature of the charges against him.

With counsel, Burns proceeded to trial on June 13, 2016. At trial, the State called two witnesses who repeated out-of-court statements Jackson (the victim) had made the night of the assault: Jackson's neighbor Carol Donovan and Bellingham Police Officer Kent Poortinga.

During direct examination, Donovan testified that on November 14, 2015, she was at home about to eat dinner when she heard "yelling and crashing around downstairs." VRP (June 14, 2016) at 253. She then heard yelling outside and people coming up the stairs, so she opened her door and saw Jackson running away from Burns, who was reaching out and trying to grab her. Over defense's hearsay objection, the court allowed Donovan to testify that Jackson said, "'[H]e's trying to kill me,'" admitting the statement as an excited utterance and present sense impression. VRP (June 14, 2016) at 254. Donovan then testified she grabbed Jackson by the arm and pulled her into the condominium, closed and locked the door, and called the police. Jackson was "extremely upset," looked like she had been crying, and was having trouble breathing. VRP (June 14, 2016) at 254. Jackson told Donovan, "'[H]e choked me,'" and Donovan observed red marks on Jackson's neck. VRP (June 14, 2016) at 254-55. Donovan inquired if Jackson was okay, and she said she was calming down and felt safe there.

Over another hearsay objection, the court allowed limited testimony as to what Jackson told Donovan had happened with Burns. Donovan testified they had had a fight and Burns "choked her, she blacked out, she came to, she kicked him and she ran out of there and that's when I saw her on the stairway." VRP (June 14, 2016) at 260.

8

The State next called Officer Poortinga, who was a responding officer the night of the incident. He testified that when he made contact with Jackson at Donovan's condominium, Jackson was "obviously distraught, . . . crying and very disturbed." VRP (June 14, 2016) at 280. Jackson told Officer Poortinga that her "head, neck and chest were very sore." VRP (June 14, 2016) at 281. During direct examination, the prosecutor elicited minimal other testimony regarding Jackson's statements to police. Defense made no objections to the State eliciting Jackson's statements to Officer Poortinga.

On cross-examination, defense counsel asked, "[D]id Ms. Jackson tell you that she had been choked to unconsciousness three separate times that night?" VRP (June 14, 2016) at 296. Officer Poortinga responded, "I believe so." VRP (June 14, 2016) at 296. On redirect, the State's first question was "Counsel asked about the statement that Ms. Jackson made. Let's give the jury a full understanding of those statements. What did she tell you what [sic] happened?" VRP (June 14, 2016) at 298. Officer Poortinga testified Jackson told him that she and Burns had dated and lived together and that he had been staying with her for the last two weeks. Jackson told the officer she was trying to get Burns to leave and he refused, and then Burns got "agitated" and "'snapped.'" VRP (June 14, 2016) at 299, 300. Officer Poortinga testified she told him,

9

> He then got on top of her and with one knee on her chest began to cover her nose with one hand gripping her neck with the other hand.
>
> Then [Ms. Jackson] said that she couldn't breath[e] and she said "at all" as it felt like he was, again quoting, "pushing with all his body weight on her neck". She said that she tried to squeak out and plead with him.

VRP (June 14, 2016) at 300. "She was pleading with Michael before she again quote 'blacked out'." VRP (June 14, 2016) at 300. The officer then testified that Jackson told him that when she regained consciousness, Burns attacked her again, and she blacked out again; this also happened a third time. She told the officer, "Michael had said he was already going to prison so he was going to make it quote 'worth it and kill [me].'" VRP (June 14, 2016) at 301. She then kicked Burns off and ran away, and she went into Donovan's condominium. Defense counsel did not object to any of this testimony.

Toward the close of the first day of trial, the prosecutor indicated that he was not sure Jackson was going to respond to her subpoena and testify at the trial the following day. The next morning, the parties discussed Jackson's absence from the trial. The prosecutor expressed the State's efforts to communicate with Jackson and sought to put on witnesses to explain the absence to the jury. Defense counsel indicated she objected only to any speculation as to Jackson's reasons for not testifying. Defense counsel also sought to impeach Jackson as a hearsay witness

10

through her alleged prior inconsistent statements made at the defense investigation interview. The court allowed the impeachment after an offer of proof. Defense counsel did *not* object on confrontation clause grounds to Jackson's previous statements that had come in through Donovan and Officer Poortinga, even after learning she would not testify. The jury convicted Burns as charged.

Burns appealed his conviction, arguing that the trial court abused its discretion when it denied him his right to represent himself at trial and asserting, for the first time on appeal, that the admission of Jackson's statements at trial violated his constitutional right to confrontation. The Court of Appeals affirmed the conviction, holding that the trial court did not abuse its discretion in denying Burns's request to proceed pro se and holding that Burns waived his confrontation clause claim when he did not assert it at trial. *State v. Burns,* No. 75537-4-I, slip op. at 12-13 (Wash. Ct. App. Jan. 16, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/755374.pdf. Burns petitioned this court for review, which we granted as to the issues of self-representation and the confrontation clause.[2] *State v. Burns,* 191 Wn.2d 1004, 428 P.3d 123 (2018).

---

[2] Burns also argued on appeal that the convictions were the same criminal conduct, but we denied review of that issue.

ISSUES

1. Whether the trial court abused its discretion in denying Burns's requests to proceed pro se.

2. Whether a party who did not object at trial may raise an alleged violation of the confrontation clause for the first time on appeal.

ANALYSIS

1. Self-representation

"Criminal defendants have an explicit right to self-representation under the Washington Constitution and an implicit right under the Sixth Amendment to the United States Constitution." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing WASH. CONST. art. I, § 22 ("the accused shall have the right to appear and defend in person"); *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). "The unjustified denial of this [fundamental] right requires reversal." *State v. Stenson*, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997).

We review the denial of a defendant's request to proceed pro se for abuse of discretion. A trial court abuses its discretion if the decision is manifestly unreasonable such that no reasonable mind could come to that decision, if the decision is not supported by the facts, or if the judge applied an incorrect legal standard. *Madsen*, 168 Wn.2d at 504. Absent an abuse of discretion, we will not

reverse a trial court's decision, "even if we may have reached a different conclusion on de novo review." *State v. Curry*, 191 Wn.2d 475, 486, 423 P.3d 179 (2018).

We give great deference to the trial court's discretion because the trial court is in a favorable position to the appellate courts in evaluating a request to proceed pro se. Trial judges have more experience with evaluating requests to proceed pro se and have the benefit of observing the behavior, intonation, and characteristics of the defendant during a request. *Curry*, 191 Wn.2d at 485.

A tension exists between the constitutional right to self-representation and the constitutional right to proceed with adequate counsel. *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). Both the United States Supreme Court and this court have directed courts to indulge in "'*every reasonable presumption*' against a defendant's waiver of his or her right to counsel." *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999) (emphasis added) (quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)). Therefore, in reviewing the denial of a defendant's request to proceed pro se, the presumption is *against* the waiver of counsel. However, even with this presumption, a trial court may deny a request to proceed pro se only if the request is "equivocal, untimely, involuntary,

13

or *made without a general understanding of the consequences.*" *Madsen*, 168

Wn.2d at 505 (emphasis added).

In evaluating a defendant's request to go pro se, the trial court is faced with

a multistep process. The first step is a combined determination of whether the

request is unequivocal and timely. The parties in this case do not dispute that Burns

made multiple unequivocal and timely requests to proceed pro se. Burns made

several requests, and the trial court held two separate hearings on whether to allow

Burns to waive his right to counsel.

Where a request is unequivocal and timely, a trial court must then determine

if the request is knowing, voluntary, and intelligent. *Madsen*, 168 Wn.2d at 504

(citing *Faretta*, 422 U.S. at 835). The method for determining whether a defendant

understands the risks of self-representation is a colloquy on the record. The

colloquy should generally include a discussion of the nature of the charges against

the defendant, the maximum penalty, and the fact that the defendant will be subject

to the technical and procedural rules of the court in the presentation of his case.

*City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984). In order to

give direction to trial courts and create an adequate record for an appeal, our cases

have suggested several additional, nonexhaustive factors to consider in the

colloquy including education, experience with the justice system, mental health,

and competency. *See Madsen*, 168 Wn.2d at 505; *Acrey*, 103 Wn.2d at 211-12. The trial court may also look to the defendant's behavior, intonation, and willingness to cooperate with the court. *See Curry*, 191 Wn.2d at 484-85. While the suggested factors are not exhaustive or sufficient individually, the trial court must evaluate all of the information in front of it and use its discretion to determine whether the waiver is knowing, voluntary, and intelligent, and to ensure a waiver is made with an understanding of the consequences and the seriousness of the charges, keeping in mind the presumption against the waiver of the right to counsel. So long as a trial court conducted an adequate inquiry into a defendant's request and there is a factual basis for the court's finding that the waiver of counsel was not knowing, intelligent, and voluntary, the trial court's discretionary decision will not be disturbed on appeal.

Where no colloquy occurs, we have found the record insufficient to review the basis for the trial court's ruling. For example, in *Madsen*, we reversed the trial court's denial of the defendant's multiple requests to proceed pro se. 168 Wn.2d at 510. As to one request, we reasoned because the court did not engage in a full colloquy and "there is no evidence to the contrary, the only permissible conclusion is that Madsen's request was voluntary, knowing, and intelligent." *Madsen*, 168 Wn.2d at 506. Then Justice Fairhurst reiterated the reasoning in *DeWeese*, that for

a waiver to be knowing, intelligent, and voluntary, a defendant must be aware of and understand the nature of the charges against him, which the record did not reflect. *Madsen*, 168 Wn.2d at 511-12 (Fairhurst, J., concurring).

The present case presents the converse of *Madsen* because the trial court engaged in a comprehensive colloquy, inquiring into the factors our cases have established. While it may be true that Burns indicated, "I understand completely what you're talking about" and "I completely understand everything that I'm up against," his other remarks indicate the exact opposite. VRP (Jan. 13, 2016) at 7, 13. At the hearing, Burns indicated the criminal charges did not pertain to him, he did not enter into a contract with the State, the multiple felonies he faced did not faze him, conducting a trial is just about acting, the United States is a corporation of which he is not a citizen, he had only two cases that had been "globalized into one matter," and he rejected any contract that created the case against him. The record establishes that the trial court judge expressed concerns about whether Burns could knowingly and intelligently waive his right to counsel based on Burns's statements and behavior at the hearing. The colloquy in this case was extensive and comprehensive and supports the conclusion that Burns did not understand the nature or seriousness of the charges against him.

In concluding that Burns was not denied his constitutional right to represent himself, the Court of Appeals analyzed the "extensive colloquy" between Burns and the trial court. *Burns*, slip op. at 9. The Court of Appeals noted that the record showed that Burns did not understand the charges against him and that he was facing significant prison time; he also did not understand the importance of courtroom procedure and the "technicalities" of self-representation. *Burns*, slip op. at 10. Further, "Burns's interactions with the trial court revealed a lack of understanding of the gravity of his situation." *Burns*, slip op. at 10.

Burns argues that "the court denied [his] request to represent himself based solely upon his competency." Suppl. Br. of Pet'r at 17. While the trial court judge did once say she did not find Burns "competent" to represent himself, this is somewhat a mischaracterization of the record and disregards the entirety of the record, the judge's formal oral ruling, the discussion of the proposed order, the text of the proposed order, and the ruling in the subsequent motion hearing. All of this supports the trial court's ruling that the request was denied because Burns did not understand the nature of the charges against him and, thus, could not knowingly, intelligently, and voluntarily waive his right to counsel.

17

Relying on *In re Personal Restraint of Rhome*, 172 Wn.2d 654, 260 P.3d 874 (2011), and *Madsen*, Burns further argues that a trial court's concern over a defendant's competency to stand trial is only one factor in considering whether a waiver is knowing, voluntary, and intelligent. Suppl. Br. of Pet'r at 17. While this may be true, Burns appears to conflate a *question* of competency with an outright denial of his request *because* of competency.

In *Godinez v. Moran*, the United States Supreme Court held that competency to stand trial is not all that is necessary to be able to waive the right to counsel; "a trial court must [also] satisfy itself that the waiver of his constitutional rights is *knowing and voluntary*." 509 U.S. 389, 400, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) (emphasis added) (citing *Faretta*, 422 U.S. at 835). "In this sense there *is* a 'heightened' standard . . . for waiving the right to counsel, but it is not a heightened standard of *competence*." *Godinez*, 509 U.S. at 400-01. That same reasoning applies here.

Even without the benefit of seeing Burns's demeanor and hearing his intonation as the judge did, we agree his statements are not consistent with a defendant who understands the nature and seriousness of the charges against him.

We hold that the trial court did not abuse its discretion when it denied Burns's request to represent himself because the trial court record is sufficient to

support the conclusion that Burns did not understand the nature and seriousness of the charges against him and could not knowingly, voluntarily, and intelligently waive his right to counsel. We affirm the Court of Appeals on this issue.

2. Confrontation Clause

Raised for the first time on appeal, Burns argues that the admission of Jackson's out-of-court statements to the neighbor and the officer violated his right to confrontation as she herself did not testify at trial. The Court of Appeals held that because no objection was made at trial, the issue was waived. Burns argues that we should apply RAP 2.5(a)(3) and find violation of the confrontation clause is a "manifest error affecting a constitutional right" such that he can raise this claim for the first time on appeal. Suppl. Br. of Pet'r at 7. We reject this argument, agree with the Court of Appeals, and hold that Burns waived any challenge to the testimony by not objecting at trial.[3]

The Sixth Amendment affords the accused the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. This right is also established by article I, section 22 of the Washington State Constitution.

---

[3] Puzzlingly, the concurrence comes to this same conclusion under a convoluted test that conflates ineffective assistance of counsel and RAP 2.5(a)(3): because counsel did not object at trial and there was a plausible tactical reason to not object, Burns is not entitled to relief.

Under RAP 2.5(a)(3), a defendant may raise for the first time on appeal a "manifest error affecting a constitutional right." In *State v. Kronich*, 160 Wn.2d 893, 161 P.3d 982 (2007), we reviewed an alleged confrontation clause violation, applying RAP 2.5(a)(3) where no objection was made at trial. In *Kronich*, the defendant alleged, for the first time on appeal, that the admission of his certified statement of his driving record violated his right to confrontation. We held that a violation of the confrontation clause could be raised for the first time on appeal subject to a RAP 2.5(a)(3) manifest constitutional error analysis. Given that the alleged error was a violation of the confrontation clause and the State's case was "fatally undermined" without the driving record, we held this was a manifest constitutional error and reached the merits of the confrontation clause violation, although we ultimately found no violation and affirmed the conviction. *Kronich*, 160 Wn.2d at 900.

In light of the United States Supreme Court cases of *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), among others, we have reevaluated our cases to align with the minimum requirements of the Sixth Amendment established by the Supreme Court. In *Melendez-Diaz*, the United States Supreme Court examined the confrontation

20

clause in conjunction with notice-and-demand statutes and state laboratory analyst affidavits, holding the admission of the affidavits violated the confrontation clause. In that opinion, the Supreme Court also held that "[t]he defendant *always* has the burden of raising his Confrontation Clause objection." *Melendez-Diaz*, 557 U.S. at 327. The Supreme Court further emphasized, "The right to confrontation may, of course, be waived, including by *failure to object to the offending evidence.*" *Melendez-Diaz*, 557 U.S. at 314 n.3 (emphasis added).

In *Jasper*, we overruled *Kronich* in light of the United States Supreme Court holding in *Melendez-Diaz. See State v. Jasper*, 174 Wn.2d 96, 100, 271 P.3d 876 (2012) ("[W]e now overrule [*Kronich*] to the extent [it is] contrary to United States Supreme Court precedent."). The State here argues that *Melendez-Diaz* and *Jasper* have undermined the approach taken in *Kronich* and where a defendant does not object to testimony at trial on confrontation grounds, he or she waives his or her right to confrontation. Aligning our analysis in this context with that employed by the United States Supreme Court furthers consistency between cases. Therefore, we abrogate *Kronich* to the extent its analysis is inconsistent with the waiver approach set forth in this opinion.

In our Courts of Appeals, the divisions have employed two different approaches in reviewing unpreserved confrontation clause claimed errors: waiver by failure to object and manifest constitutional error under RAP 2.5(a)(3) analysis.

Division One in this case, relying on its analysis and reasoning from *State v. O'Cain*, 169 Wn. App. 228, 279 P.3d 926 (2012), concluded that where the defendant does not object on confrontation grounds, any claimed error is waived. In *O'Cain*, the Court of Appeals engaged in a comprehensive analysis of when a confrontation clause claim can be reviewed on appeal in light of *Melendez-Diaz*, referring to the many instances in which the United States Supreme Court in that case emphasized the burden of the defense to object to evidence in violation of the confrontation clause. The *O'Cain* opinion highlighted two principles that are recognized and significant in *Melendez-Diaz*: (1) a defendant loses the right to confrontation if he or she does not object at trial and (2) states have the power to create their own rules that govern how a defendant may assert a confrontation clause violation.[4] *See O'Cain*, 169 Wn. App. at 236-40.

---

[4] The concurrence disputes this reading of *Melendez-Diaz* and asserts that the only proposition is that states may create their own procedural rules that govern confrontation clause claims. Concurrence at 4. Even if this were a correct reading of *Melendez-Diaz*, that would mean that we are free to interpret our rules to require a defendant to object on confrontation clause grounds at trial or waive that right on appeal, as we do in this opinion.

In *O'Cain*, the court identified the applicable procedural rule in Washington to be ER 103. Under ER 103(a)(1), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless . . . a timely objection or motion to strike is made, stating the specific ground of objection." Applying ER 103 and requiring a defendant to object at trial "protects the integrity of judicial proceedings by denying a defendant the opportunity to sit on his rights, bet on the verdict, and then, if the verdict is adverse, gain a retrial by asserting his rights for the first time on appeal." *O'Cain*, 169 Wn. App. at 243. Requiring an objection under ER 103 is also consistent with the discovery and disclosure process of criminal procedure.

The *O'Cain* court further reasoned that allowing a defendant to assert a confrontation claim for the first time on appeal is problematic because it would place the trial judge in a compromising position. The judge would be faced with the decision to sua sponte identify and rule on a confrontation clause violation, which may disrupt trial or defense tactics, or risk presiding over a trial that could be reversed on appeal. Whether defense counsel will object on confrontation grounds can unquestionably be a trial tactic. When the defense has the choice to object or not, where no objection or motion to strike is made, appellate courts are left speculating as to whether it was a trial tactic or an error by the defense. Requiring an objection also has a practicable aspect: the trial court judge will rule

23

on the objection, giving the appellate courts an actual trial court decision to review. *See O'Cain*, 169 Wn. App. at 243-44.

Divisions Two and Three[5] seem to apply RAP 2.5(a)(3), analyzing whether the alleged error amounts to a manifest error affecting a constitutional right. *See, e.g., State v. Hart*, 195 Wn. App. 449, 458 n.3, 381 P.3d 142 (2016) (acknowledging that although the *O'Cain* analysis of *Melendez-Diaz* and *Bullcoming*[6] requiring a defendant to assert the right at trial is "sound," it will follow the RAP 2.5(a)(3) analysis from *Hieb*[7] until and unless this court overrules it). Under this analysis, we first determine if an alleged error is constitutional in nature and, then, whether the alleged error had "'practical and identifiable consequences in the trial.'" *Kronich*, 160 Wn.2d at 899 (quoting *State v. Kirkpatrick*, 160 Wn.2d 873, 880, 161 P.3d 990 (2007), *overruled in part by*

---

[5] While recent cases from Division Three apply a RAP 2.5(a)(3) analysis on whether one can bring a confrontation clause claim for the first time of appeal, in a recent unpublished decision on this issue, Division Three adopted the *O'Cain* analysis of waiver in *State v. Kuneki*, No. 34174-7-III, slip op. at 14 (Wash. Ct. App. Feb. 13, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/341747_unp.pdf. Division Three also previously held that failure to object constitutes waiver. *See State v. Schroeder*, 164 Wn. App. 164, 168, 262 P.3d 1237 (2011) (failure to object to admission of crime laboratory certificate constitutes waiver of right to confrontation).

[6] *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011).

[7] *State v. Hieb*, 107 Wn.2d 97, 104-12, 727 P.2d 239 (1986) (engaging in a harmless error analysis of a confrontation clause violation that the Court of Appeals allowed under RAP 2.5, but not engaging in a RAP 2.5 analysis).

*State v. Burns*, No. 95528-0

*Jasper*, 174 Wn.2d 96, (quoting *State v. Stein*, 144 Wn.2d 236, 240, 27 P.3d 184 (2001))).

In the present case, the Court of Appeals followed the *O'Cain* analysis and held that a defendant must assert his right to confrontation at trial or the right is waived. We agree with the *O'Cain* analysis of *Melendez-Diaz*. Thus, we affirm the Court of Appeals and explicitly adopt a requirement that a defendant raise an objection at trial or waive the right of confrontation. Requiring an objection brings this claim to align with what we employ in other cases where we have held that some constitutional rights may be waived by a failure to object.[8] *See, e.g., State v. Slert*, 186 Wn.2d 869, 383 P.3d 466 (2016) (Sixth Amendment right to be present during in chambers discussion of potential jury bias waived when defendant did not object at trial); *In re Adoption of M.S.M.-P.*, 184 Wn.2d 496, 358 P.3d 1163 (2015) (counsel's affirmative consent to closure of proceedings waived parent's right to open proceedings); *see also State v. Sublett*, 176 Wn.2d 58, 124-25, 292 P.3d 715 (2012) (Madsen, C.J., concurring) (discussing constitutional rights the United States Supreme Court has listed can be waived by failure to object,

---

[8] The concurrence claims that a waiver analysis is "confusing" because it is "varied and unpredictable." Concurrence at 11. However, our analysis states that without an objection there is no ruling to review on appeal, and so we do not review it. It does not get more straightforward and consistent. Further, if the concept of waiver were so confusing, varied, and unpredictable, we would not use it for *any* constitutional rights. As discussed in text, this is certainly not the case.

including the right to be present, Fourth Amendment right against unlawful search and seizure, unlawful postarrest delay, double jeopardy defense, Fifth Amendment claims, and *the right of confrontation*). Further, requiring an objection is in the interests of judicial efficiency and clarity, and provides a basis for appellate courts to review a trial judge's decision. Where a defendant does not object at trial, "nothing the trial court does or fails to do is a denial of the right, and if there is no denial of a right, there is no error by the trial court, manifest or otherwise, that an appellate court can review." *State v. Fraser*, 170 Wn. App. 13, 25-26, 282 P.3d 152 (2012).

## CONCLUSION

We affirm the Court of Appeals. The trial court did not abuse its discretion in denying Burns's request to proceed pro se. Further, Burns waived his right to

*State v. Burns*, No. 95528-0

raise a confrontation clause violation on appeal when he did not object on that

ground at trial.

_____

WE CONCUR:

Fairhurst, CJ.
_____     _____

                                     González, J.
                                     _____

Owens, J.
_____

                                     Yu, J.
_____     _____

27

*State v. Burns (Michael I.)*
(Stephens, J., concurring)


No. 95528-0


STEPHENS, J. (concurring)—I agree with the majority's holding on the right

to self-representation and I concur fully in its analysis of that claim. While I also

agree that Michael Burns's unpreserved confrontation clause claim is not reviewable

on its merits, I strongly disagree with the majority's decision to adopt the analysis

from *State v. O'Cain*, 169 Wn. App. 228, 279 P.3d 926 (2012), in rejecting that

claim.

*O'Cain* articulated the novel theory, not advanced in any of the briefing before

that court, that the United States Supreme Court's decision in *Melendez-Diaz v.*

*Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), overrides

our standard for reviewing unpreserved constitutional claims under RAP 2.5(a)(3)

with respect to confrontation clause claims. *O'Cain*, 169 Wn. App. at 235-48.[1] As

---

[1] *See* Br. of Resp't at 11, *State v. O'Cain*, No. 65735-6-I (Wash. Ct. App.), *reprinted*
*in* 2 Briefs 169 Wn. App. (2011) (conceding that a confrontation clause claim may be raised

explained below, this theory misunderstands *Melendez-Diaz* and violates core principles of federalism. Instead of rejecting *O'Cain*'s flawed analysis, the majority embraces it and carves out a confrontation clause exception to RAP 2.5(a)(3) based on a confusing notion of "waiver" that is contrary to the rule's very purpose. It claims this approach furthers judicial efficiency and finality, but our established RAP 2.5(a)(3) analysis already addresses these prudential concerns by limiting review of new claims on appeal to manifest error affecting a constitutional right. I would adhere to that sound analysis.

I.  *O'Cain*'s Analysis, Which the Majority Affirms, Fundamentally Misunderstands the United States Supreme Court's Decision in *Melendez-Diaz* and Violates Core Principles of Federalism

The Court of Appeals in *O'Cain* refused to apply RAP 2.5(a)(3) because it wrongly believed *Melendez-Diaz* eclipsed our state scope of review rule. The question presented in *Melendez-Diaz* was whether forensic analyst affidavits (in that case, certifying the results of a lab test indicating the presence of cocaine) were "'testimonial'" for purposes of the Sixth Amendment right of confrontation, triggering the defendant's right to cross-examine the affiant. 557 U.S. at 307; U.S. CONST. amend. VI. A majority concluded the answer was yes, *id.* at 329, and also

_____

for the first time on appeal if the requirements of RAP 2.5(a)(3) are met). The State cited *Melendez-Diaz* only once in its briefing in *O'Cain* and then solely for the point that statements to medical treatment providers are nontestimonial. *Id.* at 12.

responded to a lengthy dissent that argued the criminal justice system would grind to a halt under the weight of so much confrontation, *id.* at 341 (Kennedy, J., dissenting). The dissent predicted a cumbersome and expensive new reality where expert witnesses would need to present in-court testimony about undisputed facts:

> As matters stood before today's opinion, analysts already spent considerable time appearing as witnesses in those few cases where the defendant, unlike petitioner . . . contested the analyst's result and subpoenaed the analyst. . . . By requiring analysts also to appear in the far greater number of cases where defendants do not dispute the analyst's result, the Court imposes enormous costs on the administration of justice.

*Id.* Addressing this practical concern, the *Melendez-Diaz* majority explained that its holding was not likely to clog trial court proceedings with undisputed expert testimony. It noted that states often, for scheduling purposes, require defendants to raise confrontation clause objections to expert affidavits well before trial and that, in any event, defendants often deliberately "waive" such objections for strategic reasons (e.g., to avoid highlighting damaging facts). *Id.* at 327-28.

This portion of *Melendez-Diaz* did not announce any new holding. It simply recognized that states may, consistent with what today's majority properly calls "the *minimum* requirements of the Sixth Amendment," majority at 20 (emphasis added), adopt procedural notice-and-demand rules requiring defendants to preserve confrontation clause error. *See Melendez-Diaz*, 557 U.S. at 327 ("States are free to adopt procedural rules governing objections."). That uncontroversial principle was

not disputed in *Melendez-Diaz*, was not disputed in *O'Cain*, and is not disputed here. *See* majority at 23-24 ("Applying ER 103 and requiring a defendant to object at trial . . . is . . . consistent with the discovery and disclosure process of criminal procedure . . . [and] giv[es] the appellate courts an actual trial court decision to review.").

The Court of Appeals' mistake in *O'Cain*—embraced by the majority today— was to take these undisputed background principles and misconstrue them as a federal constitutional restriction on the scope of state appellate review:

> The interpretation of the Sixth Amendment is an interpretation of federal law. In *Melendez-Diaz* . . . the United States Supreme Court made clear that the confrontation right is lost if it is not timely asserted at or before trial. . . . [A] state appellate rule may not be utilized so as to undermine—even partially— a United States Supreme Court holding as to the scope or extent of a federal constitutional right.

169 Wn. App. at 247-48.

This analysis reflects two fundamental errors.

First, it reads into *Melendez-Diaz* a holding that the Sixth Amendment right of confrontation is forever "lost" if it is not asserted "at or before trial." *O'Cain*, 169 Wn. App. at 248. But *Melendez-Diaz* says only that states may adopt procedural rules regulating the preservation of confrontation clause error. 557 U.S. at 327. It does not hold that, unless such procedural rules are strictly observed, the Sixth Amendment right of confrontation somehow evaporates or fails to attach at all. Indeed, if that were the case, then unpreserved confrontation clause claims would

-4-

never be reviewable in federal appellate courts post-*Melendez-Diaz*. But, of course, they are. *E.g.*, *United States v. Charles*, 722 F.3d 1319, 1322 (11th Cir. 2013) (unpreserved confrontation clause claim reviewed on appeal for plain error); *United States v. Martinez*, 588 F.3d 301, 313 (6th Cir. 2009) (same); *United States v. Matus-Zayas*, 655 F.3d 1092, 1101-03 (9th Cir. 2011) (trial court committed "plain error" in violation of confrontation clause protections, even absent objection by defendant, when it admitted depositions by witnesses government had not shown to be "unavailable" for live testimony); *see also United States v. Roach*, 896 F.3d 1185, 1194 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 845 (2019) (appellant waived confrontation clause arguments on appeal because alleged error was unpreserved and appellant failed to argue plain error).[2] Such claims remain subject to Federal Rule of Criminal Procedure (FRCrP) 52(b), which, similar to RAP 2.5(a)(3),

---

[2] The majority makes no attempt at all to reconcile *O'Cain*'s reading of *Melendez-Diaz*—according to which the Sixth Amendment prohibits appellate review of unpreserved confrontation clause claims—with these cases. Instead, it shrugs off the discrepancy and concludes that, even if *O'Cain* got this wrong, this means only that "we are free to interpret our rules to require a defendant to object . . . at trial or waive [the confrontation] right on appeal, as we do in this opinion." Majority at 22 n.4. But the majority is not merely interpreting our rules, it is crafting a brand new, confrontation-clause-specific rule in direct contradiction to RAP 2.5(a)(3)'s plain language. A judicial opinion should not be used to bypass normal rule making procedure, as that deprives us of the benefit of valuable perspectives. *In re Pers. Restraint of Carlstad*, 150 Wn.2d 583, 592 n.4, 80 P.3d 587 (2003) (even if nonexistent rule is desirable, "the rule should be adopted through the normal rule-making process[, which] . . . enables all interested and affected parties to participate").

-5-

facilitates relief for certain unpreserved yet obvious errors. Nothing in *Melendez-Diaz* calls into question these procedural rules allowing for limited appellate review of unpreserved errors.[3]

*O'Cain*'s second error, closely related to the first, is its conclusion that because states *may* require defendants to preserve confrontation clause error by making contemporaneous objections at trial, they therefore *must* enforce that procedural requirement on appeal without exception for manifest error. 169 Wn. App. at 248 ("a state appellate rule may not be utilized so as to undermine . . . a United States Supreme Court holding as to the scope or extent of a federal constitutional right"). This conclusion violates basic tenets of federalism and sells short the power of states to govern their own court proceedings. Contrary to *O'Cain*'s reasoning, states may always afford *more* protections for criminal defendants than the Fourteenth Amendment requires. *E.g.*, *California v. Ramos*, 463

---

[3] *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) ("[FRCrP] 52(b), which governs on appeal from criminal proceedings, provides a court of appeals a limited power to correct errors that were forfeited because not timely raised in district court."). FRCrP 52(b) and RAP 2.5(a)(3) are not identical in the scope of relief they afford. For example, under FRCrP 52(b) the appellate court *may* review only those unpreserved errors that meet the rule's criteria (plain error affecting substantial rights), *Olano*, 507 U.S. at 732-35, while under RAP 2.5(a)(3) an appellate court *must* review any error that meets the rule's criteria (manifest error affecting a constitutional right). But, distinctions aside, FRCrP 52(b) and RAP 2.5(a)(3) are similar in that they provide a mechanism for appellate review of unpreserved error—including unpreserved confrontation clause error.

U.S. 992, 1013-14, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983) ("[i]t is elementary that States are free to provide greater protections in their criminal justice system than the Federal Constitution requires"). *O'Cain* ignores this fundamental constitutional principle and misreads *Melendez-Diaz* as holding that the Sixth Amendment somehow prohibits Washington courts from applying RAP 2.5(a)(3) to confrontation clause claims.

This holding is so deeply flawed that Division One walked it back just a month after *O'Cain* was published, observing that RAP 2.5(a) is "[a]rguably" the kind of procedural rule contemplated in *Melendez-Diaz*, through which states may address preservation of confrontation clause error. *State v. Fraser*, 170 Wn. App. 13, 26-27, 282 P.3d 152 (2012). In fact, this is more than arguable, it is indisputable. Nothing in the federal constitution prohibits Washington courts from addressing "manifest" confrontation clause error under RAP 2.5(a)(3) just like any other type of manifest constitutional error. Division Two has recognized as much and expressly rejected *O'Cain*'s misguided "waiver" analysis. *State v. Hart*, 195 Wn. App. 449, 458 n.3, 381 P.3d 142 (2016) (acknowledging "*O'Cain*['s] . . . sound reasoning for imposing [strict preservation of confrontation clause error] requirement" but holding *Melendez-Diaz* does not preclude application of RAP 2.5(a)(3) to confrontation clause claims). As evidenced by this case, however, the *O'Cain* analysis has

persisted in Division One. *State v. Burns*, No. 75537-4-I, slip op. at 13 (Wash. Ct. App. Jan. 16, 2018) (unpublished) ("Because Burns did not raise the issue of confrontation below, he may not now seek appellate relief on this claim." (citing *O'Cain*, 169 Wn. App. at 252)), http://www.courts.wa.gov/opinions/pdf/755374.pdf; *see also, e.g.*, *State v. Sage*, 1 Wn. App. 2d 685, 702-03, 407 P.3d 359 (2017), *review denied*, 191 Wn.2d 1007 (2018) (unpreserved confrontation clause objection per se unreviewable under *O'Cain*).

We should take this opportunity to explicitly reject *O'Cain*'s flawed analysis. Unfortunately, the majority champions it. Majority at 25 ("We agree with the *O'Cain* analysis of *Melendez-Diaz* . . . and explicitly adopt a requirement that a defendant raise an objection at trial or waive the right of confrontation."). As discussed below, this misstep sows significant confusion and inconsistency into our RAP 2.5(a)(3) jurisprudence.

II.   By Endorsing *O'Cain*'s Confusing Concept of "Waiver," the Majority Carves Out a Confrontation Clause Exception to RAP 2.5(a) That Disregards the Rule's Logic and Furthers No Legitimate Policy

Noting the post-*O'Cain* split in the Court of Appeals, the majority misframes the question presented here as involving a *choice* between "waiver by failure to object" (*O'Cain*'s approach) and "manifest constitutional error under RAP 2.5(a)(3)." Majority at 22-25. But, there is no choice to be made. *O'Cain*'s ironclad

concept of "waiver" depends entirely on the misreading of *Melendez-Diaz* discussed above, when in fact RAP 2.5(a)(3) exists for the very purpose of assessing whether an appellate court will review a claim that was unpreserved below.

In cases discussing RAP 2.5(a)(3), we have sometimes said that, by failing to lodge a contemporaneous objection at trial, a defendant "waives" the right to raise the alleged error on appeal. But we have never held that a defendant waives the right to a RAP 2.5(a)(3) analysis altogether. On the contrary, we have always made clear that a party waives an issue for appeal only *because* that party fails to satisfy RAP 2.5(a)(3)'s requirements. *E.g.*, *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011) ("The general rule in Washington is that a party's failure to raise an issue at trial waives the issue on appeal unless the party can show the presence of a "'manifest error affecting a constitutional right.'"" (quoting *State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009) (quoting *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)))); *State v. McNeal*, 145 Wn.2d 352, 361-62, 37 P.3d 280 (2002) ("it cannot be said that the apparent inconsistency of the verdicts is a manifest error affecting a constitutional right . . .[;] therefore, [the defendant] waived his right to challenge the verdict by failing to raise the issue before the jury

was discharged"). While this use of the term "waiver" may be imprecise,[4] it is longstanding and consistent: in the context of RAP 2.5(a)(3), saying that a defendant "waived" the right to appeal is simply another way of saying the defendant did not meet the rule's prerequisites to review of unpreserved error.

The majority's novel conclusion drawn from *O'Cain*—that by failing to preserve an alleged confrontation clause error a defendant forever "waives" any possibility of appellate review under RAP 2.5(a)(3)—cancels out the very purpose of the rule. By design, RAP 2.5(a)(3) applies specifically and only to unpreserved trial error. RAP 2.5(a) (governing "Errors Raised for First Time on Review"); *see also State v. Lamar*, 180 Wn.2d 576, 583, 327 P.3d 46 (2014) (RAP 2.5(a)(3) "serves a gatekeeping function that will bar review of [most] claimed constitutional errors to which no exception was made"); *State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999) ("RAP 2.5(a)(3) is an exception to the general rule that parties cannot raise new arguments on appeal"). It defies the logic of the rule to refuse to apply it on the basis of nothing more than the defendant's failure to object, i.e., "waiver," below.

---

[4] *See State v. Sublett*, 176 Wn.2d 58, 154 & n.49, 292 P.3d 715 (2012) (Wiggins, J., concurring) (preferring the term "forfeiture" to describe a party's failure to timely assert a right, and arguing that "waiver" denotes "'the "intentional relinquishment or abandonment of a known right"'") (quoting *Olano*, 507 U.S. at 733-34 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)))).

Perhaps recognizing that its holding is at odds with RAP 2.5(a)'s plain language, the majority attempts to justify it with policy reasoning. However, none of this reasoning withstands scrutiny.

First, the majority claims that its approach "furthers consistency between cases." Majority at 21. I fail to see how. Before today's holding we articulated a consistent RAP 2.5(a)(3) analysis applicable to unpreserved constitutional claims of all kinds, including claims of confrontation clause error, *e.g.*, *State v. Kronich*, 160 Wn.2d 893, 900-01, 161 P.3d 982 (2007), *overruled on other grounds by State v. Jasper*, 174 Wn.2d 96, 271 P.3d 876 (2012). The majority now introduces a confusing new concept of "waiver" into this analysis and adopts a special, confrontation-clause-specific exception to RAP 2.5(a)(3). This makes our scope of review jurisprudence more varied and unpredictable, not more consistent.

Second, the majority appeals generally to the value of enforcing contemporaneous objection requirements such as ER 103: timely objections create a record sufficient for appellate review and relieve trial courts from the burden of raising issues sua sponte. Majority at 23. Of course these are important concerns, but the majority's reliance on them proves too much. ER 103 applies to *all* evidentiary objections. *See State v. Blake*, 172 Wn. App. 515, 529, 298 P.3d 769 (2012). And timely objections are valuable in all contexts—there is no reason to

enforce preservation of error rules more strictly where the confrontation clause is concerned. Besides, our RAP 2.5(a)(3) analysis already addresses these policy concerns through its "manifest error" requirement. As is evident from the analysis of Burns's claim below, that analysis imposes significant limitations on appellate review, assuring that parties fully appreciate the importance of raising contemporary objections, including those based on the confrontation clause. Thus, there is no policy justification for carving out a confrontation clause exception to RAP 2.5(a)(3); it needlessly limits an appellate court's ability to do justice under the rule.

Finally, the majority implies that *Melendez-Diaz* and this court's decision in *Jasper*, 174 Wn.2d 96, "undermined" our application of RAP 2.5(a)(3) to an unpreserved confrontation clause claim in *Kronich*, 160 Wn.2d 893. *See* majority at 21. Not so. In *Kronich*, we held that affidavits certifying the status of a defendant's driving privilege were nontestimonial for purposes of confrontation clause protections. 160 Wn.2d at 902-04. We also held that the appellant could raise his confrontation clause claim for the first time on appeal because he had satisfied RAP 2.5(a)(3)'s requirements ("manifest error affecting a constitutional right"). *Id.* at 901. In *Jasper*, we recognized that *Melendez-Diaz* had abrogated *Kronich*'s holding on the testimonial nature of affidavit certifications, but we did not question its holding on RAP 2.5(a)(3). 174 Wn.2d at 111-16. There is no discussion in either

*Melendez-Diaz* or *Jasper* about RAP 2.5(a)(3) specifically, or appellate review of unpreserved error generally, because in each of those cases the appellants preserved their claims through objections at trial. *Melendez-Diaz*, 557 U.S. at 309; *Jasper*, 174 Wn.2d at 108 n.2.

In sum, the majority's new concept of "waiver"—which creates a unique confrontation clause exception to our standard RAP 2.5(a)(3) analysis—introduces significant confusion into our scope of review jurisprudence. None of the majority's policy arguments justify this outcome. In determining whether to review Burns's unpreserved confrontation clause claim, we should adhere to our long-standing RAP 2.5(a)(3) analysis.

III. Burns Does Not Demonstrate the Manifest Error Required for Review of His Confrontation Clause Claim under RAP 2.5(a)(3)

RAP 2.5(a)(3) provides that "a party may raise . . . for the first time in the appellate court . . . manifest error affecting a constitutional right." Therefore, before we will reach the merits of any unpreserved claim under that rule, we must be satisfied both that the claim is "truly of a constitutional magnitude" and that the alleged trial court error is "manifest" in the record. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015) (citing *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). The purpose of this rule is to encourage timely objections while also

providing a remedy for unpreserved, yet obvious errors that "result in serious injustice to an accused." *Id.* at 583.

Under our long-standing precedent, an error is not "manifest," for purposes of RAP 2.5(a)(3), unless there is "'a plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *WWJ Corp.*, 138 Wn.2d at 603 (quoting *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)). *Kronich* acknowledged this standard, and, as noted above, nothing in *Jasper* or *Melendez-Diaz* undermines *Kronich*'s application of RAP 2.5(a)(3) to unpreserved confrontation clause error. However, one aspect of *Kronich*'s RAP 2.5(a)(3) analysis—specifically, its definition of the "manifest error" necessary to trigger review—has been undermined by subsequent cases applying that rule in other contexts. The court in *Kronich* concluded that the unpreserved error was "manifest" because, "had [the appellant] *successfully* raised his confrontation clause challenge at trial, the [evidence at issue] would have been excluded." 160 Wn.2d at 900 (emphasis added). In other words, the *Kronich* court concluded that *if* indeed the confrontation clause claim had merit, then the unpreserved error was "manifest" under RAP 2.5(a)(3). But this analysis is inconsistent with our more recent cases on "manifest error."

In recent cases we have explained that, "'to determine whether an error is practical and identifiable, [i.e., manifest,] the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.'" *Kalebaugh*, 183 Wn.2d at 584 (quoting *O'Hara*, 167 Wn.2d at 100). And we have said that "[i]t is not the role of an appellate court on direct appeal to address claims where the trial court could not have foreseen the potential error or where the prosecutor or trial counsel could have been justified in their actions or failure to object." *O'Hara*, 167 Wn.2d at 100. Therefore, to demonstrate that an unpreserved error is "manifest" for purposes of RAP 2.5(a)(3), the appellant must show that the trial court could have prevented the error, notwithstanding counsel's failure to object. *See Kalebaugh*, 183 Wn.2d at 584 (unobjected jury instruction on "reasonable doubt" standard was "manifest error" because trial court should have known it misstated the law). At a minimum, this standard ensures that there is an adequate record for determining the merits of the unpreserved claim on appeal. *See O'Hara*, 167 Wn.2d at 99-100 ("manifest error" inquiry must focus on "whether the error is so obvious on the record that the error warrants appellate review"); *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007) ("If the trial record is insufficient to determine the merits of the constitutional claim, the error is not manifest and review is not warranted.").

Burns makes no attempt to meet this standard. Instead, he relies solely on *Kronich* to conclude that an unpreserved confrontation clause error is *always* "manifest" under RAP 2.5(a)(3). Suppl. Br. of Pet'r at 10 (omitting any discussion of the trial record relevant to his confrontation clause claim and arguing instead only that "*Kronich* demonstrates . . . the issue raised by Mr. Burns was constitutional and manifest"). However, unpreserved confrontation clause claims are not per se "manifest" under RAP 2.5(a)(3). Here, for example, the State argues that trial counsel had tactical reasons to forgo a confrontation clause objection to Officer Kent Poortinga's hearsay testimony. Indeed, counsel elicited some of that testimony on cross-examination. A tactical failure to object is not a "manifest error" under RAP 2.5(a)(3), *Kirkman*, 159 Wn.2d at 937, and yet Burns makes no attempt to answer the State's argument. Instead, he asserts without analysis that, "*had an objection been lodged*, the trial court could have excluded the statements, thus avoiding the constitutional error." Pet. for Review at 14-15 (emphasis added). But that misapprehends our RAP 2.5(a)(3) manifest error analysis. An objection was *not* lodged, and thus, under a proper analysis, we ask whether the trial court could have corrected the error sua sponte, given what it knew at the time. *Kalebaugh*, 183 Wn.2d at 584 (quoting *O'Hara*, 167 Wn.2d at 100).

-16-

Under the RAP 2.5(a)(3) analysis that has evolved post-*Kronich*, Burns does not demonstrate the "manifest error" required for review. On this basis, I concur in the majority's decision not to address the merits of Burns's unpreserved confrontation clause claim.

## CONCLUSION

Applying RAP 2.5(a)(3), I would hold that Burns has not demonstrated grounds to reach the merits of his unpreserved claim. That narrow holding is all that is needed to resolve this case.

Unfortunately, the majority goes much further. Embracing the flawed analysis in *O'Cain*, it holds that no defendant raising an unpreserved confrontation clause claim can ever demonstrate manifest error sufficient to sustain appellate review. Indeed, the majority suggests no error even *exists* in the absence of a contemporaneous trial objection. This holding misreads *Melendez-Diaz* and sows needless confusion into our jurisprudence by making unpreserved confrontation clause error uniquely unreviewable, even when it results in "serious injustice to an accused." *Kalebaugh*, 183 Wn.2d at 583. I would adhere to RAP 2.5(a)(3) and retain the appellate courts' ability to address situations of serious injustice.

Stephens, J.

Madsen, J.

Wiggins J.